## RAILWAY COMPANIES *v.* FOSTER.

## (*Jackson.*   April 26, 1890.)

1. SUPREME COURT PRACTICE.   *Charge not considered if not made part of record.*

Charge of lower Court cannot be looked to in this Court unless it has been made part of the record by the bill of exceptions.   Merely copying it into the transcript is not sufficient.

Cases cited and approved: Huddleston *v.* State, 7 Bax., 55; Bass *v.* State, 6 Bax., 583; McGhee *v.* Grady, 12 Lea, 96; Owens *v.* State, 16 Lea, 1.

2. CHARGE OF COURT.   *Office of special or additional instructions.*

The legitimate office of special or additional instructions to the jury, to be given at the request of the parties, is not to suggest or supply the original charge, but to cure and supply defects and omissions in that charge—" to present some material question not treated at all, or to limit or extend, eliminate or more accurately define, some proposition already submitted to the jury."

Case cited and approved: Roller *v.* Bachman, 5 Lea, 158, 159.

(See Railway Cos. *v.* Hendricks, *post*, p. 710.)

3. SAME.   *Same.   Must be presented after original charge.*

And therefore such special or additional instructions must be presented *after—not before*—the delivery of the original charge to the jury. "At the conclusion of the evidence" is too early.

4. SAME.   *Same.   Effect of omission of the original charge from record.*

And therefore requests for instructions will not be held to be for *additional instructions*, where the original charge is not made part of the record.   The presumption that the Court charged fully and correctly prevails in such case.

Cases cited and approved: Lane *v.* Keith, 2 Bax., 189; Insurance Company *v.* Sturges, 12 Heis., 339.

5. CONTRIBUTORY NEGLIGENCE. *As defense to suit against railroad for injury resulting from non-observance of precautions.*

Contributory negligence of the plaintiff, however gross, does not operate as an absolute bar to an action against a railway company for injury resulting from non-observance of the statutory precautions for prevention of accidents; but such negligence goes only in mitigation of damages.

Code construed: §§ 1298 *et seq.* (M. & V.); §§ 1166 *et seq.* (T. & S.).

Cases cited and approved: Railroad *v.* Smith, 6 Heis., 174; Hill *v.* Railroad, 9 Heis., 823; Railroad *v.* Walker, 11 Heis., 383; Railroad *v.* Nowlin, 1 Lea, 523; Railroad *v.* Smith, 9 Lea, 470.

Cited and distinguished: Railroad *v.* Swaney, 5 Lea, 119.

---

## FROM DYER.

---

Appeal in error from Circuit Court of Dyer County. T. J. FLIPPIN, J.

HOLMES CUMMINS and LATTA, PARKS & DRAPER for Railway Companies.

PARKS & DRAPER for Foster.

CALDWELL, J. On August 2, 1888, David Foster, a colored man about seventy years of age, while walking upon the railroad track about one mile south of Newbern, Tennessee, was overtaken by a freight-train, struck by the locomotive and so severely injured that he died within an hour.

Eliza Foster, his widow, having first taken out letters of administration on his estate, brought this

action against the plaintiffs in error, claiming $10,-000 damages. She obtained a judgment for $300, and the defendants below have appealed in error.

Appellants assign error (1) on the original charge of the trial Judge; (2) on his action in refusing to instruct the jury as requested; (3) on what is termed the second charge.

*First.*—The first assignment cannot be maintained, because the original charge of the Court upon which it is based, and which is complained of as erroneous, is not made a part of the record by bill of exceptions. It is true that what purports to be a charge in the case is found in the transcript, but it precedes the bill of exceptions, and is in no way made a part of it. Therefore, under a familiar and well-established rule of practice, it cannot be considered for any purpose in this Court. *Huddleston* v. *State*, 7 Bax., 55; *Bass* v. *State*, 6 Bax., 583; *McGhee* v. *Grady*, 12 Lea, 96; *Owens* v. *State*, 16 Lea, 1.

*Second.*—The next assignment fails for equally conclusive but different reasons. To put the trial Judge in error for refusing to give special instructions to the jury, it must appear that they were requested *after* and *not before* he submitted his general charge; the object of such instructions being not to suggest in the first instance what the charge shall be, but rather to supply some omission or correct some mistake made in the general charge—to present some material question not treated at all, or to limit or extend, eliminate or

43—4 p

more accurately define, some proposition already submitted to the jury.

Under the practice of this Court as laid down in *Roller* v. *Bachman*, 5 Lea, 158, 159, the several propositions which it is insisted were erroneously refused in this case, cannot be considered for purposes of reversal, because they were submitted to the trial Judge "at the conclusion of the evidence," and no request for additional instruction was made after he had delivered his charge.

Of course we know it is usual for counsel, by oral argument or written statement, sometimes both, to present their views of the law of the case in advance of the charge. That is a proper practice, and instead of being condemned is to be encouraged; yet, such presentation is not ' to be treated as a request for additional instructions, and made ground for reversal if not adopted by the trial Judge. The office of special or additional instructions is that already indicated.

It may be said that counsel who have submitted one view of the law, should not be put to the useless and embarrassing task of repeating it, in the form of an additional instruction, after the Court has given a contrary proposition in charge. That is true. But in that case nothing is lost if the request is not made; because, if the charge as given is erroneous, a reversal will follow without the request, and if correct the request could not change the result.

Again, the record, after setting out the prop-

osition submitted for charge, recites that the request was "refused and the Court did instruct the jury as follows:" As a matter of fact, nothing *follows*, and the bill of exceptions remains in that incomplete condition, failing to show what instructions were given instead of those requested. So far as we are informed, they may have contained a full and accurate statement of the law applicable to every question arising in the case. Whether this be true in reality cannot be ascertained, but it must be presumed to be so in the absence of those instructions themselves. *Lane* v. *Keith*, 2 Bax., 189; *Insurance Company* v. *Sturges*, 12 Heis., 339.

*Third.*—The other assignment is made on the following recital in the bill of exceptions: " The jury having considered the case, returned and asked the Court whether, if they found that the defendant had not strictly complied with all the statutory rules or precautions as given in charge, yet that the deceased's own want of care and gross neglect· was the direct cause of his injury and death, they could not yet find for the defendant. To which the Court replied that they could not, but should consider such contributory neglect on the part of the deceased in mitigation of damages. If they found the railroad company wanting in full performance of statutory duties, plaintiff would be entitled to some damages in any event."

It is insisted that this action of the Court was erroneous, and that he should have answered the

question of the jury in the affirmative. Taking
the case as stated in the question, the ' contention
is that, inasmuch as the gross neglect of the de-
ceased was the direct cause of his injury and
death, his negligence should operate, not merely in
mitigation of damages, but as a bar to the action,
notwithstanding the failure of the railroad em-
ployes to observe the precautions prescribed in
§ 1166 of the Code.

Learned counsel · makes an able and forcible
argument in support of this view; yet we think
it contrary to the obvious meaning of the statute.
The response of the trial Judge is in conformity
to the construction announced by this Court in
numerous decisions, some of which we cite. *N. &
C. R. R. Co.* v. *Smith*, 6 Heis., 174; *Hill* v. *L.
& N. R. R. Co.*, 9 Heis., 823; *Railroad* v. *Walker*,
11 Heis., 383; *N. & C. R. R. Co.* v. *Nowlin*, 1
Lea, 523; *Railroad Co.* v. *Smith*, 9 Lea, 470.

Section 1166 of the Code (T. & S.) prescribes
certain precautions to be observed by railroads for
the prevention of accidents. The next two sec-
tions declare, in the plainest terms, the legal con-
sequences of observance and non-observance. By
§ 1197 it is declared that in every case of non-
observance the railroad *shall be liable* for the dam-
age done; and by § 1198 it is declared that in
every case of observance it *shall not be liable* at
all. By the positive language of the statute lia-
bility flows from non-observance, and non-liability
follows observance. Neither liability nor non-lia-

bility is made to depend on the cautious or incautious conduct of the person injured; both are to be determined by the conduct of the railroad's employes. The injured person may be ever so negligent in the one case and yet recover *something*, while in the other case he may be entirely without negligence and yet recover *nothing*.

At the common law contributory negligence may bar the action, but under the statute it is to be considered only in mitigation of damages. This distinction is forcibly illustrated and pointedly enforced in the ninth Lea case just cited. There the plaintiff's intestate walked some distance on the track in the direction of the coming train and in full view of it, though several times warned of her danger by others near by. Indeed, "her conduct was so unaccountable as to induce the belief upon the part of some that her death was intentional." There were two counts in the declaration, the first charging a failure to observe the statutory precautions, and the second charging common law negligence. Among other things, the trial Judge was requested to charge the jury that it was the duty of an intelligent being to exercise reasonable care to avoid danger, and that this precaution must be in proportion to the danger and knowledge of its existence. He responded: "Such is the law applicable to the second count, but not to the first." To the question thus presented this Court, speaking through Judge McFarland, said: "This proposition was applicable to

both counts, the difference being, however, that contributory negligence does not defeat the action under the first count, but only mitigates the damages; whereas, under the second count it might defeat the action altogether." 9 Lea, 474.

The same distinguished Judge, in delivering the opinion of the Court in Walker's case, said: "It will be observed that the statute does not make the liability of the company depend upon whether or not the accident was the consequence of the failure of the employes to observe these precautions, but, on the contrary, the company shall be liable to all damages resulting from any accident or collision, in all cases where the company fails to prove that the precautions were observed. Therefore, if the precautions have not been observed the company is liable, although it may appear that the observance of the precautions would not have prevented the accident." 11 Heis., 385.

In Nowlin's case this Court said: "The frequent and constant ruling of this Court has been that if railroads shall comply fully with the requirements of §§ 1166 to 1168, inclusive, of the Code, they are not liable in any case covered by the statutes; and, on the other hand, if they do *not* thus comply they are liable. So far as any defense may go in bar of the action, it must be such an one as the statute requires. From this it will be seen that no defense in *bar* of any such action as this can be predicated upon contributive negligence of

the party suing, *be it ever so gross.* On the other hand this Court has held that although the railroad may be and is liable because of failure to comply with the statutes, yet the contributory negligence of the party suing will go in reduction of damages." 1 Lea, 523.

In Hill's case it appeared that his intestate was walking on the track, toward the train, when struck and killed. Other men who were with him stepped off the track before the train got dangerously near. To explain his non-compliance with the statute, the engineer said he saw the other men step off and "supposed the deceased would do so too, as he might have put himself out of danger by a single step."

The liability of the railroad company for damages was denied on the ground that "the deceased came to his death by his own reckless incaution," by "his own willful act."

Though the supposition of the engineer was a very natural and reasonable one, the judgment below was affirmed, this Court saying: "The *statute* does not brook the *slightest speculation* upon things *probable* or *possible*, either by *the Court* or *the company's agents;* but demands *absolute obedience* to its provisions, whether they seem *necessary* or *not.*" 9 Heis., 827.

The deceased in the 6 Heiskell case was killed by a locomotive while he was lying upon the track drunk and asleep. This Court held that "the negligence of the deceased in contributing to

the accident would be no bar to the action;" that the only means of escaping liability was by showing that "the precautions laid down in the Code, § 1166, subsection 5, were observed." 6 Heis., 176, 177.

Further citation and review of our cases on this subject would be unprofitable. They are all of one accord.

Had the facts justified it, the failure to comply with the requirements of the statute could have been excused and liability avoided by showing that compliance was impossible after the deceased appeared upon the track and could have been seen by a proper lookout. *E. T. & Va. R. R. Co.* v. *Swaney*, 5 Lea, 119.

No such excuse was claimed, however; but, on the contrary, the engineer admitted that he saw the deceased on the track for at least a quarter of a mile back, and came almost upon him before attempting to observe the statutory precautions, his reason for his failure being that he saw the deceased look back, and supposed he would get out of the way in time to prevent a collision.

Let the judgment be affirmed.

---

### DISSENTING OPINION.

FOLKES, J. Concerning the main point of decision, I regret my inability to concur either with the reasoning or the conclusion as announced. The

holding places a strictness of construction upon our statute, which, to my mind, is wholly foreign from the legislative intention, and one extremely burdensome upon commerce and travel; for, while the burden is apparently upon the railroads only, it is in fact upon the public, who are directly interested in the speed and economy with which transportation of persons and property can be accomplished.

Under this decision, the railroad companies must apply the brakes and use every possible means of stopping the train whenever a person is seen on the track. This, too, without regard to the distance, and notwithstanding the person has responded to the alarm-whistle by looking up, or looking back, as the case may be, and otherwise indicated to the engineer in charge, as a reasonable and prudent man, that he has seen and appreciates the danger and will avoid it.

Or, failing to apply the brakes and to attempt to stop the train, the company must respond in substantial damages to the party injured, regardless of his conduct in thus misleading the engineer, and in willfully remaining on the track until too late for any possible precautions, statutory or otherwise, to prevent the injury.

The enforcement of such a rule would often require forty-eight hours for a train to pass from Memphis to Nashville, instead of eight or ten hours. It would render all close connections or through transportation—confessedly of vital impor-

tance to persons and property—well-nigh impossible, as there could be no reasonable certainty of making schedule time if the gross negligence, caprice, or malice of those who are in the habit of making the road-bed a common footpath is to stop or slow up every train.

To me it seems too plain for argument that the Legislature never intended to place a living, moving, seeing, hearing, human creature of mature years and sound discretion on the same footing with cattle or inanimate objects, or with a person apparently unaware of the approaching train, or incapacitated, by reason of his surroundings or otherwise, from appreciating and guarding against the danger of the situation.

The statute says "person, animal, or other *obstruction.*" Under well-known canons of construction the "person" within the meaning of the legislators must be, or appear to the lookout to be, an "obstruction" upon the track. It could never have occurred to the Legislature that a living, active, alert adult, who had indicated to a careful and prudent observer by his conduct that he saw and appreciated the danger, and would avail himself of ample time and opportunity afforded by the distance to step safely from the track, would be regarded as an obstruction so as immediately to call for resort to the statutory precautions against accident. This Court has repeatedly held that our statute in question was only declaratory of the common law rule of pru-

dence and care in the exercise of precautionary measures to prevent accidents from the running of trains. Fleming's case, 14 Lea, 139, and Humphreys' case, 12 Lea, 200, where it is said these statutes "embody no more than the common law, or any other enlightened system of jurisprudence, demands at the hands of any citizen. This statute has only shifted the burden of proof."

And in Pratt's case, 1 Pickle, 14, Judge Snodgrass, speaking for the present Court, says, after citing *Horn* v. *Railroad*, 1 Cold., 75; *Railroad Company* v. *Connor*, 9 Heis., 21; and *Burke* v. *Railroad*, 7 Heis., 463, concerning the statute in question: "It does not create any new form of negligence which may be distinguished from another by the term 'statutory,' or leave out any which might be classified as common law negligence."

That the company would not be liable under common law principles in the case at bar, under the case put by the jury in its inquiry of the trial Judge and sustained by the record, there is no one so bold as to affirm, I presume. *Schofield* v. *Railroad*, 114 U. S., 615; and *Railroad* v. *Houston*, 95 U. S., 697.

That the employes are not bound at common law to stop every time a person is seen ahead on the track who gives evidence of being alert and of having heard and seen the train, has repeatedly been held by Courts of high authority. *Railroad Company* v. *Stroud* (Mississippi), 31 Am. & Eng.

R. R. Cas., 443; *Chrystal* v. *Railroad Company* (New York), 31 Am. & Eng. R. R. Cas., 411; *Nicholls* v. *Railroad* (Kentucky), 34 Am. & Eng. R. R. Cas., 37; *Railroad Company* v. *Walker* (Indiana), 12 Am. & Eng. R. R. Cas., 121; *Railroad Company* v. *Smith* (Texas), 19 Am. & Eng. R. R. Cas., 21; *Railroad Company* v. *Mundy* (Arkansas), 31 Am. & Eng. R. R. Cas., 424.

The case made in the proof, when taken in connection with the response of the trial Judge to the inquiry made by the jury while they had the case under advisement, clearly presents the question we have been discussing, and emphasizes the error of the Circuit Judge. It is undisputed that the deceased heard the whistle, and said: "Come on, old train; I'll get out of your way." And some moments later, when the train had gotten within some hundred or two yards of him, again hearing the whistle, he turned and looked to see its distance, and this movement was observed by the engineer.

It will not be out of place to repeat what took place between the Court and jury. Being manifestly of opinion that there should be no recovery against the railroad, and yet embarrassed in reaching what to them appeared a just result under the instructions theretofore given, the jury "returned and asked the Court whether, if they found that the defendant had not strictly complied with all the statutory rules or precautions as given in charge, yet deceased's own want of care and gross

neglect was the direct cause of his injury and death, they could not yet find for the defendant. To which the Court replied that they could not, but should consider such contributory neglect on the part of the deceased in mitigation of damages; but if they found the railroad company wanting in full performance of statutory duties, plaintiff would be entitled to some damages in any event."

The opinion of the majority does not attempt to justify the doctrine thus announced by any thing to be found in the common law, but places its affirmance solely upon the statute, as imperatively demanded by the terms thereof and the decisions of this Court thereon.

Now, I most respectfully but earnestly contend that such extreme holding has no warrant in the statute fairly construed, and that it has no decision of this Court directly sustaining it, unless it be the case of *Hill* v. *Railroad Company*, 9 Heis., 823, opinion in 1872 by Judge Sneed. While the result in that case may be said to be altogether proper—under the statement of facts given by the learned Judge to the effect that the deceased was drunk, and had given to the railroad operative no evidence of having seen the train, as shown by the language of the Judge in the inquiry, "How could the engineer know that the deceased was not both blind and deaf?" and the negligence of the engineer under the circumstances of the case in not ringing the bell until within twenty-five or thirty feet nor sounding the whistle until within twelve or

fifteen feet—while the affirmance of the judgment in Hill's case, we say, was all right, either under or independent of the statute, on account of negligence, it is a matter of common knowledge with the profession that the extreme language of the opinion has been greatly criticised, and has in numerous cases of later date been departed from. For instance: "That the statute must be obeyed in its severest literality; that it does not brook the slightest speculation upon things probable or possible, either by the Court or by the company's agents, but demands an absolute obedience to its provisions, whether they seem necessary or not." If this is sound, the door is shut in the face of reason. That this Court has, in fact, reasoned about the possibility and probability, and taken hold of this statute and construed it within the light of reason and common sense, just as it does any and all statutes to arrive at the legislative intent, is amply shown by repeated decisions which are wholly at variance with the strict construction given in the Hill case. Only a few of them need be stated. *Railroad* v. *Scales*, 2 Lea, 688, where our present learned Chief Justice, commenting upon *Railroad* v. *Thomas*, 5 Heis., 860, says of the literal construction insisted on, that it was mere *obiter*, just as we now say of the language we have quoted from the Hill case; and he reversed the trial Judge for following such a construction, and held the statute did not apply where the appearance was so sudden as to

prevent compliance. The statute did not make such exception, but the Court made it by construction, and Scales' case was followed on the same line in the Swaney case in 5 Lea, 120. So in *Melton* v. *Railroad*, 2 Lea, 262, where the rain so beat upon the head-light as to obscure the vision of the lookout. So the holding that the statute does not apply to passengers on the cars (7 Lea, 313); nor to persons traveling parallel with the road (Feathers' case, 10 Lea, 103); nor to employes about the company's yards (9 Heis., 270). So the Court has taken the liberty of holding that the word "road" used in the statute means track, and does not apply to persons or animals on the road-way unless on the track or within striking distance of the train.

So also the Courts, holding that contributory negligence must be considered in mitigation of damages, have taken liberties with the literalism of the statute, which says that in case of non-compliance the railroad company shall be responsible for all damages to person or property, occasioned or resulting from any accident or collision that may occur. Likewise in *Railroad* v. *Scott*, 3 Pickle, 494, in holding that the precautions need not be resorted to in the order named in the statute.

Now, where is the authority for all these holdings to be found, save in the application of the common sense and common law rules of construction? Certainly not in a blind adherence to the literalism of the statute.

To my mind, the holding in the case at bar is a recurrence to the *obiter* of the Hill case, and not in harmony with the spirit of the later cases to which I have just referred. Again, I submit it a mistake to suppose that the familiar rule announced of allowing contributory negligence to go in mitigation of damages had its origin in cases growing out of the statute in question, and that it was a necessity or an expedient resorted to to give efficacy to the statute which allowed a recovery when the prescribed precautions had not been complied with, and at the same time prevent an excessive or a full recovery.

As was said by Judge Cooper, speaking for the Court in Fleming's case, "the rule is applicable to all cases of contributory negligence, and is not confined to cases growing out of our statutes regulating the duties of railroad employes on a moving train when an obstruction appears on the track." It is merely an adoption of the law which prevails in civil actions for assault and battery, where the conduct of the plaintiff in the way of provocation is always admissible in evidence to mitigate the damages.

Now, what is the true rule in the character of cases we are considering? I cannot state it better than in the language of this Court in Fleming's case, 14 Lea, pages 136–139, a part of which I quote: "In this State we hold that although the injured party may contribute to the injury by his own carelessness or wrongful conduct, yet if the

act of negligence of the party inflicting the injury was the proximate cause of the injury, the latter will be liable in damages, the negligence or wrongful conduct of the person injured being taken into consideration by way of mitigation in estimating damages. In other words, if defendant was guilty of a wrong by which plaintiff is injured, and plaintiff was also in some degree negligent, or contributed to the injury, it should go in mitigation of damages, but cannot justify or excuse the wrong." Citing Fain's case in 12 Lea, 35, and continuing, says: "At the same time we hold that if a party by his own gross negligence brings an injury upon himself, or proximately contribute to such injury, he cannot recover; neither can he recover in case of mutual negligence where both are equally blamable."

This Court followed the rule as above stated, announcing in Hall's case, 4 Pickle, at Knoxville last term, that the negligence of plaintiff which is to be taken in mitigation is such as contributed incidentally, and not as the proximate or immediate cause of the injury, and that where the negligence of the plaintiff was the proximate in the sense of direct cause of the injury there could be no recovery.

Now, the case made by request of the jury and instruction of the Court is one where the injury was, in the language of the jury, the direct result of the gross negligence of the plaintiff. In such case my view is that it is a bar to the action,

44—4 P

and that there is nothing in the statute to make the company liable where it has been guilty of no negligence, common or statutory, and where the injury is the direct result of the plaintiff's gross negligence, and that there is nothing authoritative in any of our adjudged cases to the contrary. If so, the sooner they be departed from the better.

In conclusion, I submit that if I be wrong in the views I have above hastily prepared, and we are constrained to hold that the plaintiff, under the statute, should have some recovery, then we should, upon every consideration of public policy, make the recovery merely nominal in a case where confessedly there could be no recovery without the statute.

It will not do to say that in the case at bar the recovery being only for $300, is, for a human life, substantially nominal. For the purpose of this one case that may be granted. But we are settling a principle, and that principle is that the jury may fix damages in such cases at such figures as to them may seem right, and allow the direct cause and gross negligence of plaintiff to be considered by them in mitigation. Now, under such a charge, where they have fixed their verdict at $2,500 or more, how is this Court to disturb it? How can the Court say that the jury have not fixed damages at $10,000 and allowed $7,500 in mitigation under the rule which prevents this Court from disturbing the verdict in such cases, except where it is so excessive as to indicate passion or prejudice?

Railway Companies *v.* Foster.

With such a charge stamped by the approval of this Court, I see where it may lead to verdicts that are shocking to every sense of right, and yet be beyond our power to vacate.

For these reasons, I reluctantly but respectfully dissent from the opinion just announced by the majority of the Court.

It is, perhaps, needless to add that no thoughtful person will suppose, from any thing I have herein said, that railroads are at liberty to run down any trespasser upon their tracks. The dangerous character of the means they employ imposes upon them a very high degree of care in the running of their trains, independent of any statute; and, if experience or observation is worth any thing, the juries of the country may be depended on to hold them to the exercise of proper care and prudence in the effort to prevent injury to persons on the track, but we submit it should be done always under a proper charge by the Court.