LOUISVILLE & N. R. CO. v. TRUETT.

(Circuit Court of Appeals, Sixth Circuit.   November 6, 1901.)

No. 949.

RAILROADS—ACCIDENT AT CROSSING—TENNESSEE STATUTE.

Shannon's Code Tenn. §§ 1574–1576, require every railroad company to keep some person on the lookout upon all locomotives, and when any person, animal, or other obstruction appears on the road to give the alarm, put down the brakes, and use every possible means to stop the train and prevent an accident. They further provide that if it fails to take such precautions it shall be responsible for all damages resulting from any accident or collision that may occur, but that if the precautions are taken it shall not be liable, and place the burden of proof upon the

company. As construed by the supreme court of the state, such statute makes a company absolutely liable unless it shows a compliance therewith, and contributory negligence is not a defense, but goes only in mitigation of damages. The court also holds, however, that if a person seen on the track gets off, and out of reach of the train, while under observation, the company is not bound to exercise the precautions mentioned, although such person may afterward get back to the track and be injured. *Held*, that the latter rule only applied where such person had got far enough from the track, and under such circumstances, as to reasonably indicate his safety; and that where a person about to cross a track on horseback, on seeing an approaching train, attempted to turn his horse back, but the horse became frightened and unmanageable, the question whether the failure of the engineer to make any attempt to stop the train rendered the company liable for the death of such person was one of fact for the jury, there being evidence tending to show that such death was caused by the horse crowding so close to the train that deceased was struck by a passing car, and that when he was upon the track, and first seen by the engineer, the train was at such a distance that the speed might have been slackened, if not entirely stopped, before reaching the crossing.[1]

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Charles N. Burch and John W. Judd, for plaintiff in error.
John T. Allen and W. H. Washington, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. This is a suit brought by Mattie Truett, as widow of her deceased husband, Joseph H. Truett, against the Louisville & Nashville Railroad Company, to recover damages for injuries to her husband resulting in his death. The suit is brought under the statutes of Tennessee, which provide for such recovery at the suit of the persons therein designated. No question is presented involving the propriety of the widow being plaintiff in the action. The case was brought in the circuit court of the United States for the Middle district of Tennessee, and tried before the court and a jury. The trial resulted in a verdict and judgment for the plaintiff for the sum of $2,000. At the close of the evidence in the case the defendant moved for peremptory instructions to the jury to render a verdict for that party. The court declined to give that instruction, and defendant excepted. The case was thereupon submitted to the jury under instructions not now complained of. The only assignment of error relied upon is the one complaining that the court erred in refusing to grant the request for a peremptory instruction to the jury to find for the defendant. We have therefore to deal only with the question whether the evidence in the case relating to the circumstances of the accident in which the husband of the plaintiff was killed were such that the court ought to have instructed the jury to find for the defendant.

The circumstances of the case were as follows: The Louisville & Nashville Railroad, at the place where the accident occurred, runs nearly north and south. Truett resided on the east side of the track,

[1] Statutory provisions as to death by wrongful act, see note to Railroad Co. v. Wilson, 1 C. C. A. 33.

about 100 yards distant. The pike running from Franklin to Nashville runs north and south about 100 yards west of the railroad. There is a crossroad running over the railroad to Truett's residence from a point on the pike nearly opposite. About noon Truett, the deceased, was returning home on horseback. He left the pike at the crossroad, and rode to the east, passing through an open gateway on the west side of the track, and was about to cross the track, his horse's fore feet being just at the edge of the track, when, looking up, he saw a freight train rapidly approaching, not far distant. He undertook to turn his horse back and off the track. The horse became frightened and unmanageable. The train passed swiftly by, without any signal of any kind, or any attempt to stop it being made. According to the contention of the plaintiff, while the horse was whirling about, greatly frightened, Truett was thrown against the rear end of the second car in the train, or the front end of the third car, and received a heavy blow upon his right temple, which resulted in his death shortly after.

The defendant's contention was that Truett did not receive his injury by being brought into collision with the train, but that the horse ran away with him, back on to the crossroad, where it stumbled and fell, carrying its rider to the ground, his head striking a rock or stone by the side of or in the road, and that this was the cause of his injury. The statute of Tennessee which defines the duty of a railroad company in such cases is contained in Shannon's Code of Tennessee, and its provisions are as follows:

Subsection 4 of section 1574:

"Every railroad company shall keep the engineer, fireman or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

Section 1575:

"Every railroad company that fails to observe these precautions or cause them to be observed by its agents and servants shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur."

Section 1576:

"No railroad company that observes or causes to be observed, these precautions shall be responsible for any damage done to person or property on its road. The proof that it has observed these precautions shall be upon the company."

The construction given to subsection 1574 is that the duty thereby imposed is, in the conditions there stated, absolute, and that, taken in connection with section 1575, the liability is not left open to speculation or question in case the observances required are not taken when a person appears upon the road and a collision results. The railroad company is held for the consequences.

And it is also held by the supreme court of Tennessee that the statute applies in every case of a person appearing upon the track or so near to it as to be within striking distance of the train. It is further held that if the person has appeared upon the track, but has

afterwards gotten away from it while still under observation, the company is not bound to exercise the precautions mentioned in the statute, although the person might afterwards get back into such proximity to the train as to be injured thereby. Contributory negligence is not a defense, but goes in mitigation of damages. In a recent case (Transit Co. v. Walton, 105 Tenn. 415, 420, 58 S. W. 737) the supreme court of Tennessee thus expounded the statute:

"In construing these provisions, it has been heretofore held by this court, in an unbroken line of decisions, that the railroad company is liable unless it can show that these provisions and precautions have been observed, and the fact that the accident or collision would have occurred had the requirements been performed will not relieve the company from their performance nor from liability for damages. It has been said that cases of hardship, or even absurdity, may occur under such construction, but the language is explicit and certain, and capable of being given no other meaning. Railroad Co. v. Burke, 6 Cold. 45, 50; Railroad Co. v. Connor, 9 Heisk. 26; Hill v. Railroad Co., 9 Heisk. 827; Railroad Co. v. Smith, 9 Heisk. 863, 864; Railroad Co. v. Thomas, 5 Heisk. 266; Railway Co. v. Foster, 88 Tenn. 678, 13 S. W. 694, 14 S. W. 428. So strict is the rule that contributory negligence will not excuse their observance, be it ever so gross, but will only go in mitigation of damages. Railroad Co. v. Burke, 6 Cold. 45, 51; Railroad Co. v. Smith, 6 Heisk. 177; Railroad Co. v. Walker, 11 Heisk. 385; Simpson v. Railroad Co., 5 Lea, 456; Railway Co. v. Foster, 88 Tenn. 675, 680, 13 S. W. 694, 14 S. W. 428; Railroad Co. v. Conner, 2 Baxt. 382. It is true that impossibilities are not required, and if all is done that should have been done, and the accident was unavoidable, the road will not be liable. Railroad Co. v. Scales, 2 Lea, 688, 691, 694; Railroad Co. v. Swaney, 5 Lea, 119; Railway Co. v. Foster, 88 Tenn. 680, 13 S. W. 694, 14 S. W. 428. But when the impossibility and unavoidableness arise out of the default of the road the road will still be liable. Railroad Co. v. Anthony, 1 Lea, 516; Railroad Co. v. Selcer, 7 Lea, 559. The plea or defense that all efforts would have been ineffectual will not protect the road. The injunction of the law is peremptory, and the consequence of a failure is unconditional liability for damage done in cases coming within the statute. Railroad Co. v. St. John, 5 Sneed, 524, 530, 73 Am. Dec. 149. And speculation as to the effect will not be indulged by the court nor permitted by the road, but the statute demands absolute obedience, whether the precautions seem necessary or not. Hill v. Railroad Co., 9 Heisk. 827; Railway Co. v. Foster, 88 Tenn. 679, 13 S. W. 694, 14 S. W. 428. This court has said, in substance, that it is the duty of all who are engaged in running the train, in whatever department they may be employed, to give the entire energies of their bodies and minds, and to bring into requisition all means at their command, to stop the train as soon as possible, and prevent the accident. Railroad Co. v. Connor, 9 Heisk. 22. And that the road must be able to show, not only that the specific precautions were observed, but, in addition, that all possible means were employed to stop the train and prevent the accident; but the company will not be required to perform impossibilities. Railroad Co. v. Smith, 9 Heisk. 863; Railroad Co. v. Scales, 2 Lea, 688. It is incumbent on the road to show that all the brakes were put down by the express terms of the statute. Railroad Co. v. Smith, 9 Heisk. 864."

The question at the trial, therefore, was whether, although Truett and his horse had appeared upon the track, he had yet gotten far enough away from the running room of the train as to be passed safely by. The settled rule in the United States courts is that, if there is no aspect of the evidence in the case which could reasonably justify a verdict by the jury for the plaintiff, it is the duty of the court to instruct the jury that he is not entitled to recover, but that if there is evidence which, if believed by the jury, would

justify the finding of facts necessary to a recovery, the question of liability becomes one of fact, and falls within the province of the jury, and not of the court. In applying this rule, it is not material from what source the evidence comes,—whether from one side or the other. Nor is it necessary that all of the testimony of any witness in the case should be credited by the jury. They may believe that the testimony of a witness is in part true and in part mistaken. We are therefore required to look into the evidence to see whether there was in the whole body of it such proof as that the jury, if crediting it, might have found the facts which it was necessary to make out.

The train was coming from the south. It was a freight train, moving at the rate of about 15 miles an hour. There was a deep cut through which it passed, 150 to 200 yards south of the crossing. The road curved somewhat to the right where the train came out of the cut, and thence continued northerly more nearly in a straight line. It was down grade, and the train moved by its own momentum, steam being turned off.

One important element in the case was a question at what distance the approaching train was from the crossing when Truett attempted to pass over and appeared upon the track. According to the testimony of one Helm, a witness for the plaintiff, who was an eyewitness to the occurrence, the train was very near at that moment,—"almost upon him," as the witness said. He further stated that Truett, looking up, saw the train coming, and attempted to rein his horse around to the right; but the horse was unmanageable, and turned instead to the left, getting far enough away, however, to clear the engine and part of the train as they passed, when, the horse "careening" to the left, Truett fell over to the right, striking the rear end of the second car or the fore end of the third car, the horse being struck also upon its right side; and that thereupon the horse ran, with its rider, out through an opening in the fence to the crossroad, when it fell down, and Truett was thrown to the ground, where he was soon afterwards found, with his temple crushed in. The engineer on the train was called by the defendant, and testified that he was on the right-hand side of the engine, and on the inside of the curve of the track, keeping a lookout ahead, when, just before reaching the crossing, Truett and his horse appeared upon the track ahead, the horse being about to step over the rail on the west side of the track; that he, the engineer, moved to sound the whistle, but before he could do so the horse and its rider seemed to fall back and disappear; that he therefore took no further precaution, and did not know that any injury had happened until he reached the end of his trip. Another eyewitness was called by the defendant, one Parman, who gave a somewhat different account. He testified that Truett was not hit by the train at all; that the horse went up to the track, and that upon the approach of the train became frightened and unmanageable, and ran back from the railroad 25 or 30 yards, and fell down in the crossroad, throwing Truett upon the ground, where the witness found him, wounded in the head and bleeding; that there was a fixed rock in the edge

of the road near where he fell, and there were small stones around him in the roadway. The witness also testified that he did not see the engine at the time when Truett and his horse turned away from the track, and that he did not notice the train then, and did not think it had then come into his (the witness') view.

It is not impossible that the jury may have thought this witness mistaken in some part of his testimony, and yet have believed that the engine was far enough away from the crossing at the time when Truett appeared thereon, and his horse became frightened and unmanageable, for the engineer, if he was maintaining a proper lookout, to see the predicament that Truett was in. And, upon any view of the evidence, the jury might have thought the engineer, if he was maintaining a proper lookout, might have seen that Truett was in trouble, while yet he was in striking distance, and while the uncontrollable movements of the horse were such that there was danger of his coming in collision with the train before it could pass.

Accepting as correct the construction of the statute to be that where one who has appeared upon the track, and then gets away from it under circumstances which indicate that he is able to keep out of the way, but afterward gets back into collision with the train, there can be no recovery, we do not think that that consequence would follow if the man appears upon the track in such circumstances as that it is seen he may be carried by a force beyond his control out of and into the danger line, only momentarily disappearing from off the track. In such case we do not think the railroad company would be relieved from the duty of taking the prescribed caution. It may be that in the present instance it was not possible to have completely stopped the train, and still possible that by promptly applying the brakes and reversing the engine and turning on steam the movement of the train could have been slackened, and the violence of the collision have been eased to the extent of avoiding a fatal injury. We are unable to accept the proposition which seems to be contended for in the brief for plaintiff in error, that if, at the time when the engine passed, Truett was out of striking distance, that would relieve the company from the obligations imposed by the statute, but think that, as before indicated, the circumstances might be such as to justly induce the expectation that before the train could pass it might come into collision with the party who had been seen upon the track, but seen to be unable to control his own movements. Such a case seems to us to come within the intention and purpose of the statute.

We are of opinion that the court did not err in submitting the case to the jury, and the judgment must therefore be affirmed.