## WESTERN & A. R. CO. v. ROBERSON.

### (Circuit Court of Appeals, Sixth Circuit. April 3, 1894.)

### No. 44.

1. CITIZENSHIP OF CORPORATION—JURISDICTION.
   A railroad built by the state of Georgia, and extended under license (Act Tenn. 1837–38, c. 221) into the state of Tennessee, was leased by a Tennessee corporation under an act of the state of Georgia (Nov. 12, 1889), which provided that the lessee of the road should, from the time of the acceptance of the lease, become a corporation of the state of Georgia. *Held*, that the lessee was, for the purposes of jurisdiction, a citizen of Georgia, and could be sued as such for a tort committed upon that part of the leased road which was situated in the state of Tennessee.

2. JUDICIAL NOTICE—PUBLIC ACTS.
   A federal court will take judicial notice of the acts providing for the construction, operation, and leasing of a state railroad, as such acts are regarded as public acts.

3. NEGLIGENCE—DESIGNATION OF RAILROAD CROSSING.
   The designation of a railroad crossing by a sign in plain view of passing trains is sufficient under the statute (Code Tenn. Mill. & V. §§ 1298–1300) to make a railroad responsible for an accident at such crossing, where the engine driver failed to blow the whistle and ring the bell, although in the case at issue the sign was some 50 feet from the crossing, was not lettered on the side towards the railroad, and some of the letters had become obliterated.

4. CONTRIBUTORY NEGLIGENCE—MITIGATION OF DAMAGES.
   The contributory negligence of a person injured, upon failure of the engine driver to observe the statutory precautions, will not (Railroad Co. v. Burke, 6 Cold. 51) bar a recovery, but the jury must consider such contributory negligence in mitigation of damages.

5. TRIAL—ARGUMENTATIVE CHARGES.
   The fact that a charge misstated the argument of counsel, or was argumentative, is immaterial, when not misleading, and correct in the statement of the law.

6. MENTAL AND BODILY SUFFERING—QUESTION FOR JURY.
   The question whether deceased suffered mental or bodily pain, where death was instantaneous, is a question for the jury, where such pain is, under the statute (Code Tenn. Mill. & V. § 3134) an element for which damages can be recovered.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This was an action by Mary M. Roberson against the Western & Atlantic Railroad Company to recover damages for the death of her husband. There was a verdict and judgment for plaintiff, and defendant sued out this writ of error.

Chas. D. Porter and Clark & Brown, for plaintiff in error.

Andrews & Barton, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

LURTON, Circuit Judge. The defendant in error is the widow of Jesse C. Roberson, who was struck and killed by a passenger train of the Western & Atlantic Railroad Company. The deceased was at the time attempting to cross the track in a top buggy at a public road crossing in Hamilton county, Tenn., near Chicamauga station. The suit was brought by defendant in error, as widow of the deceased, to recover damages for the death of her husband, under a statute of the state of Tennessee, which gives a right of action to the widow or next of kin in such cases where the death was caused by "the wrongful act, omission or killing by another." Code (Mill. & V.), §§ 3130, 3132. There was a jury, and a verdict for plaintiff.

There were several counts in the declaration, but the case turned entirely upon the cause of action stated in the second count, and it is unnecessary to consider any other. That count was based upon the alleged failure of the railroad company to observe the statutory precaution prescribed by section 1298, Code Tenn. (Mill. & V.) subsecs. 1, 2, and sections 1299, 1300, same Code. The statutory provisions cited are as follows:

"1298. In order to prevent accidents upon railroads, the following precautions shall be observed: (1) The overseers of every public road, crossed by a railroad, shall place at each crossing a sign, marked: 'Look out for the cars when you hear the whistle or bell;' and the county court shall appropriate money to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing unless it is so designated. (2) On approaching every crossing, so distinguished, the whistle or bell of the locomotive shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing.

"1299. Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property, occasioned by, or resulting from any accident or collision that may occur.

"1300. No railroad company that observes, or causes to be observed, these precautions, shall be responsible for any damages done to person or property on its road. The proof that it has observed said precautions shall be upon the company."

Before considering the case upon its merits, a preliminary question, involving the jurisdiction of the court, must be stated and decided. The declaration alleges that plaintiff is a citizen of Tennessee, and that the defendant company is a citizen of the state of Georgia, "being a body politic and corporate, chartered and cre-

ated by the laws of the state of Georgia." The defendant company filed a plea of not guilty, and went to trial upon that plea.

One of the grounds presented to the circuit court for a new trial was that, upon the evidence submitted, the court did not have jurisdiction. This motion was supported by the introduction of the act incorporating the Western & Atlantic Railroad Company, and the act incorporating the Nashville, Chattanooga & St. Louis Railway Company. The contention was and is that the latter company was a Tennessee corporation, operating the Western & Atlantic Railroad as lessee, and that the law of Georgia constituting the lessee of the Georgia road a corporation of the state of Georgia did not affect the citizenship of the Tennessee company when operating that part of the Georgia road lying within the state of Tennessee. The several acts of the legislatures of Georgia and Tennessee providing for the construction, operation, and leasing of the Georgia road are of the class now generally regarded as public acts. Of such acts the United States courts take judicial cognizance. They therefore need not be pleaded or put in evidence. Unity v. Burrage, 103 U. S. 455; Case v. Kelly, 133 U. S. 27, 10 Sup. Ct. 216; Gormley v. Bunyan, 138, U. S. 635, 11 Sup. Ct. 453. We think there was no error in permitting these statutes to be read and considered by the court upon the motion for a new trial.

Prior to 1850, the state of Georgia, as sole owner, constructed a line of railroad between Chattanooga, in the state of Tennessee, and Atlanta, in the state of Georgia. This road was known and designated in the legislation of that state as the "Western & Atlantic Railroad." To reach the Tennessee river it became necessary to construct a few miles of the road within the state of Tennessee. The Tennessee legislature, in 1838, authorized the extension by an act which provided "that the state of Georgia shall be allowed the right of way for the extension and construction of her said railroad, from the Georgia line to the Tennessee river, and that she shall be entitled to all privileges, rights and immunities (except the subscription on the part of Tennessee), and be subject to the same restrictions as far as they are applicable, as are granted, made and prescribed for the benefit, government and direction of the Hiwassee Railroad Company." Acts Tenn. 1837–38, c. 221. It is very clear that this was a mere license extended by Tennessee, authorizing the construction and operation of the Georgia road between the Tennessee state line and the Tennessee river at Chattanooga. The Tennessee act in no way undertook to create a Tennessee corporation, or to adopt a Georgia corporation. Goodlett v. Railroad Co., 122 U. S. 391, 7 Sup. Ct. 1254.

A former lease having expired, the Georgia legislature, by an act passed November 12, 1889, made provision for releasing the road, and its operation by the lessee. The only part of that act essential to present consideration is section 8, which is as follows:

"Sec. 8. Be it further enacted, that the governor shall appoint five citizens of this state, of high character, two of whom are experts in railroad management, who, after making oath that they are neither directly or personally connected or interested in the present or future lease of said road, ex-

cept as citizens of this state, shall proceed, sixty days before the expiration of
the present lease, to examine the road and its houses, workshops, depots
and rolling stock, and all other appurtenances of every character, and shall
make out in writing, a schedule or inventory of the same, carefully describ-
ing and setting forth the true condition of the road and its rolling stock and
appurtenances, and property of every character, with the value thereof, which
shall be recorded in the office of the secretary of state, and filed in the execu-
tive office, and a copy furnished the lessees under this act; and as soon as the
terms of the lease are agreed upon between the governor and lessee or lessees,
and the name or names of the company, or corporation, or parties leasing the
road and its appurtenances, has been entered on the minutes of the executive
department as the persons or corporations proposing to take said lease, and
the acceptance of the proposition by the governor shall also have been re-
corded, and a receipt given to the state by the lessees under this act for all
the property turned over to them, the persons, associations or corporations ac-
cepted as lessees under this act, if not already a corporation created under the
laws of Georgia, shall, from the time of such acceptance, and until after the
final adjustment of all matters springing out of this lease contract, become
a body politic and corporate under the laws of this state, under the name and
style of the Western & Atlantic Railroad Company, which body corporate
shall be operated only from the time of their taking possession of said road
as lessees; and it shall have the power to sue and be sued, on all contracts
made by said company, in any county through which the road runs, after the
execution of said lease, or for any cause of action which may accrue to said
company, and to which it may become liable.    After said lease is executed,
it shall have power to make all rules, by laws and regulations for the govern-
ment of said company, and for the working and management of said road,
which are necessary and usual with railroad companies in this state, and
which are not in conflict with the constitution and laws of this state or the
United States.    The principal office and place of business of said company
shall be in this state: provided, that nothing in this act shall be construed
as an amendment of the charter of any corporation which may lease said
road: provided further, that if said lessee is a corporation already incorpo-
rated under the laws of Georgia, it shall operate said railroad as the 'Western
& Atlantic Railroad,' and such lessee may be sued on any contract or cause of
action arising out of said lease for the operation of said road, in any county
through which said road runs."

Under that act the Georgia road was leased for a long term to
the Nashville, Chattanooga & St. Louis Railway Company, a Ten-
nessee corporation, owning and operating a line of railway extend-
ing from the city of Nashville, in Tennessee, to the city of Chatta-
nooga, in the same state.    That company as lessee, took possession
under the Georgia lease act, and under that act it, as lessee,
became an incorporation of the state of Georgia under the name
and style of the Western & Atlantic Railroad Company; that be-
ing the corporate name designated in the section of the Georgia
act above set out.

The train which struck and killed the deceased was in charge
of and operated by the agents and employes of the Georgia cor-
poration.    This was the allegation of the declaration, and there
was evidence tending to establish the truth of the allegation.    There
was no reversible error in the action of the court in overruling
the motion for a new trial based upon the insufficiency of the
evidence to establish the actual operation of the road by the cor-
poration made defendant to this suit.    The question of the legal
identity of the Tennessee corporation with the corporation sued
presents a more serious issue.    The Georgia act under which the
state's road was leased, and by which the lessee was made

a corporation, has been cónstrued by the highest court of that state. The Nashville & Chattanooga Railroad Company was sued in a Georgia state court for a tort alleged to have been committed by it while operating the Western & Atlantic Railroad as lessee. That corporation appeared, and pleaded the general issue. Upon the conclusion of the plaintiffs' evidence defendant's counsel moved for a nonsuit upon the ground that the suit should have been against the Western & Atlantic Railroad Company. The trial judge ruled that the Nashville & Chattanooga Railroad Company was in fact the landlord as lessee, and was therefore the real, substantial defendant; but that it had been sued under a wrong name, and that an amendment would be permitted as a case of misnomer. Upon appeal the Georgia supreme court reversed the ruling. 16 S. E. 347. The syllabus of the case was prepared by the court, and was as follows:

"(1) The act of November 12, 1889, providing for the lease of the Western & Atlantic Railroad, declares that 'the persons, associations, or corporations accepted as lessees under the act, if not already a corporation created under the laws of Georgia, shall, from the time of such acceptance, and until after the final adjustment of all matters springing out of this lease contract, become a body politic and corporate under the laws of this state, under the name and style of the Western & Atlantic Railroad Company, which body corporate shall be operated only from the time of their taking possession of said road as lessees; and it shall have the power to sue and be sued on all contracts made by said company in any county through which the road runs, after the execution of said lease, or for any cause of action which may accrue to said company, and to which it may become liable.' When, therefore, the Nashville, Chattanooga & St. Louis Railway Company became the lessee under this act, a new corporation under the laws of Georgia was created, under the name and style of the Western & Atlantic Railroad Company; and for any tort committed in the operation of its railroad that corporation, and not the Nashville, Chattanooga & St. Louis Railway Company, is liable. In such case section 3407 of the Code does not apply, and an action against the Nashville, Chattanooga & St. Louis Railway Company for the tort is not maintainable, though the declaration alleges that 'the defendant operates as lessee the Western & Atlantic Railroad;' the act requiring that the Western & Atlantic Railroad shall be sued.

"(2) Where an action for a tort was brought against the Nashville, Chattanooga & St. Louis Railway Company, and the proof showed that the injury complained of was by the Western & Atlantic Railroad Company, the court, on motion, should have granted a nonsuit.

"(3) Where one railroad corporation is sued for a tort, the declaration cannot be amended by substituting another as defendant under the guise of correcting a misnomer."

It is clear that the Georgia legislature did not intend or purpose to simply license the Nashville & Chattanooga Railroad Company to extend its operations to the state of Georgia.

The varying circumstances under which a railroad company chartered by one state may do business in another were thus classified by Mr. Justice Gray, in Gerling v. Railroad Co. (decided Feb. 5, 1894, and not yet officially reported) 14 Sup. Ct. 533:

"A railroad corporation created by the laws of one state may carry on business in another either by virtue of being created a corporation by the laws of the latter state also, as in Railroad Co. v. Vance, 96 U. S. 450; Memphis & C. R. Co. v. Alabama, 107 U. S. 581, 2 Sup. Ct. 432; Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878; Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334,

.588, 1191; and Graham v. Railroad Co., 118 U. S. 161, 6 Sup. Ct. 1009; or by virtue of a license, permission, or authority, granted by the laws of the latter state, to act in that state under its charter from the former state. Railroad Co. v. Harris, 12 Wall. 65; Railroad Co. v. Koontz, 104 U. S. 5; Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 290, 6 Sup. Ct. 1094; Marye v. Railroad Co., 127 U. S. 117, 8 Sup. Ct. 1037. In the first alternative it cannot remove into the circuit court of the United States a suit brought against it in a court of the latter state by a citizen of that state, because it is a citizen of the same state with him. Memphis & C. R. Co. v. Alabama, above cited. In the second alternative, it can remove a suit, because it is a citizen of a different state from the plaintiff. Railroad Co. v. Koontz, above cited."

Do the facts of this case bring it within the first alternative put by Justice Gray? Has the Nashville & Chattanooga Railroad Company been created a corporation of the state of Georgia also? If so, then the decision in Memphis & C. R. Co. v. Alabama would seem to apply. We agree with the supreme court of Georgia as to the effect of the Georgia act of incorporation. That act, in our judgment, was intended, in case the lessee was not already a Georgia corporation, to create a new and distinct Georgia corporation. The language of the Georgia act is explicit:

"The persons, associations, or corporations accepted as lessees under this act, if not already a corporation created under the laws of Georgia, shall * * * become a body politic and corporate under the laws of this state, under the name and style of the Western & Atlantic Railroad Company. * * * And it shall have the power to sue and be sued, * * * in any county through which the road runs, after the execution of said lease. * * * It shall have power to make all rules and by-laws and regulations for the government of said company, and for the working and management of said road, which are necessary and usual with railroad companies in this state, and which are not in conflict with the constitution and laws of this state or the United States. The principal office and place of business of said company shall be in this state: provided, that nothing in this act shall be construed as an amendment of the charter of any corporation which may lease said road."

The last two provisions, by which the company created by the act is required to have its principal office in the state, and providing against the act being construed as a mere amendment to the charter of a company created by another state, seem to us conclusive as to the intent to create a new, distinct, and independent corporation. The case, on its facts, in this respect, is much like that of Railroad Co. v. Vance, 96 U. S. 450. The Indianapolis & St. Louis Railroad Company was a corporation of the state of Indiana. The St. Louis, Alton & Terre Haute Railroad Company was an Illinois corporation, owning a railway extending from Terre Haute, in the state of Indiana, across the state of Illinois, to the Mississippi river. The latter company leased its road to the Indiana company. There being some doubt as to the validity of the lease, the Illinois legislature passed an act confirming it. The second section of that confirmatory act provided that:

"The said lessees, their associates, successors and assigns, shall be a railroad corporation in this state, under the said style of 'The Indianapolis & St. Louis Railroad Company,' and shall possess the same or as large powers as are possessed by said lessor corporation, and such other powers as are usual to railroad corporations."

Mr. Justice Harlan, speaking for the court, as to the effect of the provision above cited, said:

"The Indiana & St. Louis Railroad Company, as lessee of the St. Louis, Alton & Terre Haute Railroad Company, was thus created, by apt words, a corporation in Illinois. The fact that it bears the same name as that given to the company incorporated by Indiana cannot change the fact that it is a distinct corporation, having a separate existence, derived from the legislation of another state."

Comment was made in that case, as in this, that the new corporation, as such, had no shareholders, and no formal organization. A corporation is, after all, nothing more nor less than a fiction of the law. We see no reason why the ordinary constituency of a corporation, such as shareholders, directors, and officers, may not be dispensed with by a legislature untrammeled by constitutional restrictions, by the substitution of another entity, fictitious though it be, as the necessary constituency of the new corporation. The shareholders in the old corporation become, for the purposes of the new creation, shareholders in the new. The directors and officers of the old entity become, for the formal purposes of the new creation and its operation, the directors and officers of the new organization. This identity of ultimate constituency does not necessarily operate to defeat the legislative purpose to make a new corporation. The old organization quoad hoc is the new corporation. Yet for the purposes of the new, as to its contracts, obligations, liabilities, and property, there is no such blending of the two as to make them, in contemplation of law, identical. Certainly, for purposes of jurisdiction, the Georgia corporation has not lost its Georgia citizenship when the obligation or liability involved concerns alone the exercise of its Georgia functions, and the operation of the road acquired, managed, and controlled by virtue alone of its existence as a Georgia corporation.

The question here involved is not, in all respects, like any case heretofore decided to which we have been referred. The plaintiff elected to sue the Georgia corporation. The wrong complained of was the wrong of the Georgia corporation. That Georgia corporation is operating, by virtue of a Georgia charter, a railroad owned by the state of Georgia, a part of which extends into Tennessee. The Tennessee part of the line was constructed, and its operation permitted, by a license from the state of Tennessee. That license authorized any company, corporation, or lessee to whom the state of Georgia might commit its road to operate and manage it by virtue of the commission from the state of Georgia. That the corporators of the Georgia corporation are citizens of Tennessee is wholly immaterial. The Georgia corporation is conclusively presumed to be a citizen of the state of its creation, and the fact that its shareholders or corporators are citizens of Tennessee does not affect the citizenship of the corporation.

The Western & Atlantic Railroad Company, the corporation sued, is exclusively a Georgia corporation, never having been made a Tennessee corporation. Neither has the state of Georgia made the Tennessee corporation, as such, a corporation of the state of Georgia.

It was competent for that state to have done so.    If it had, we should have had a case like that of Railroad Co. v. Harris, 12 Wall. 65, and cases of that class.    Neither is it a case of consolidation of a corporation of one state with a corporation of another state, under like authority from each state, as in Muller v. Dows, 94 U. S. 444; or Railway Co. v. Whitton, 13 Wall. 270, nor is the case like that of Memphis & C. R. Co. v. Alabama, 107 U. S. 581, 2 Sup. Ct. 432.    In the last-named case there were not two companies, one existing by the laws of Alabama and another under the laws of Tennessee.    Each state, acting separately, created the same corporation.    In Alabama it existed only by the fact of its Alabama creation; in Tennessee only as a Tennessee corporation.    Here we have two distinct creations.    They have no connection or identity other than in the accidental fact that the constituent elements of each are the same.    Whatever the responsibility of each for the other, the distinctness of each for jurisdictional purposes exists. The facts present a case more like that shown in Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S. 356, 10 Sup. Ct. 1004.    The state of New Hampshire created a corporation to construct and operate a railroad from Nashua to the Massachusetts line, under the corporate name and style of the Nashua & Lowell Railroad Company. A portion of the same persons named as incorporators were subsequently incorporated in Massachusetts, under the same corporate name, to construct and operate a railroad from Lowell, Mass., to a point of junction with the line of the New Hampshire road.    Subsequently each state passed an act uniting the two corporations, and constituting the shareholders in each stockholders in both. For many years the two roads were managed as one road, by one board of directors, and one set of officers.    Common stock was issued for the whole line.    A bill was filed in the United States circuit court for the district of Massachusetts by this railroad company, claiming to be a corporation of the state of New Hampshire.    The defendants were citizens of the state of Massachusetts.    The point was made that the complainant company was a citizen of Massachusetts by reason of the facts stated above.    The opinion of the court was by Mr. Justice Field, who held:

"That the New Hampshire corporation, being a citizen of that state, was entitled to go into the circuit court of Massachusetts, and bring its bill there against a citizen of Massachusetts; and that its union or consolidation with another corporation of the same name, organized under the laws of Massachusetts, did not extinguish or modify its character as a citizen of New Hampshire, or give it any such additional citizenship in Massachusetts as to defeat its right to go into that court."

Our conclusion is that for the purposes of jurisdiction the defendant company is a citizen of Georgia, and that it is wholly immaterial that the corporators of that company are citizens of Tennessee, or that the lessee so incorporated by the state of Georgia, was a corporation of the state of Tennessee.    As to the Georgia state road, and its operation, the lessee in possession was and is a citizen of Georgia, and may be sued as such.

We come now to consider the other assignments of error, prin-

cipally predicated upon the charge to the jury, or the refusal to charge as requested. The charge on the subject of the proper designation of a road crossing to make applicable the provisions of the Tennessee Code, heretofore set out, was excepted to—First, "because the court did not state to the jury the letters prescribed by the statute to distinguish the sign board, and assumed that the sign board was at the crossing, which was a disputed fact;" and, second, "because it imposes on defendant an obligation not imposed by law."

The fact that there was a sign board which contained the warning prescribed by statute was not a disputed fact. There was a controversy as to whether the sign board should be lettered on the side next the railroad; the contention of defendant being that, unless it was so lettered, the engineer was not bound to notice it. This was a question of law, to be decided by the court, who said to the jury that the object of the sign board was to warn the public; "that the board was talking, so to speak, to the people traveling that highway;" and that it was not addressed to the trainmen. He, then, in substance, said that, if such a board had been so placed at that crossing, and was there at the time of the accident, then it was the duty of the company to know that it was a road crossing, and that it was properly designated · as required by law. That the board was in plain sight of the passing train was not a disputed fact. That it was possibly something near 50 feet away from the railway track is wholly unimportant. If it had been placed by the overseer so near to the crossing as to give one traveling the road notice that he was in the immediate vicinity of the crossing, and yet was in plain sight of passing trains, it was a substantial compliance with a law intended to protect the public, and to 'be, therefore, reasonably construed. No request for other or more specific instruction was made.

Looking to the undisputed facts of the case, the court might well have said to the jury that this crossing was one sufficiently designated under the statute. It was, therefore, not error for the court to assume in the charge that the board was sufficiently near to the crossing, and that the obliteration of some of the letters thereon had not destroyed the efficacy of the warning as a substantial compliance with the statute.

On the subject of negative and positive evidence the court charged the jury as follows:

"I don't think negative and positive testimony is exactly defined in the argument of the defendant's counsel as being something that is affirmed by one and denied by another; that that which merely assumes an affirmative character or a negative character is to be regarded as negative or positive testimony in the eyes of the law. Now, if some person were to swear that two of the jurors here on the trial of this case had gotten into a personal difficulty, that would be affirmative testimony; but then, suppose some one who was present at the time, and all the jury were called, and there was no such thing occurred, that would be negative. It would be a negative proposition to the other; still it would not be of a lower character of testimony than that of the party who stated that they did fight, because the other persons were present, and, if there was a fight, they would have seen it, and would have remembered it, and that no fight occurred.

"Take the clock again: If a man were to come in and affirm that he heard

the clock strike, and if another were to come in and affirm that at the same time he was there, and he was looking at the clock, noticing the fact that it was about to strike, and that it did not strike, why, then, that would not be negative testimony; that would be affirmative testimony. It would be a conflict between the two persons as to a fact; but the character of the testimony of the last witness would be just as strong, just as positive, just as affirmative, in other words, as the other; so that the affirming or denial of a thing which happened is not the boundary line which divides this character of testimony. Now, the case in hand: If a witness swears that the bell rang and the whistle was sounded, that is affirmative. If the other witnesses come in, and say they were there, and, if the whistle sounded, they did not hear it; if the bell rang, they did not hear it,—that is negative; and the testimony of the witness who swears he did hear it is better than the one who says he did not hear it,—that is, letting the testimony stop at that point. But then, suppose the witness goes further, and says he was there, he saw the danger, he was listening for the whistle, he was listening for the bell, he saw that all depended on whether these things were done, if the man escaped, and that the whistle did not sound or the bell ring, that man's testimony is not negative of the character of which I spoke, because he is there and his attention is directed to the thing to which he is swearing. He took notice of it, his attention was called to it at the time; and so far as his statement is concerned (so far as the quality or character is concerned), it is as strong as the other. It is simply a conflict. They were both there, were both looking, both listening; and one says it did ring, and the other says it did not."

The assignment of error on this part of the charge is: (1) "That it misstates the position of the counsel."

Precisely how far the appellant was affected by what the court said as to the position of counsel in argument does not appear. The court and the counsel evidently did not agree. If the court has correctly stated the law, appellant is not affected by reason of any misunderstanding as to just what position counsel had taken.

It is next objected that the charge is erroneous in statement of the distinction between the two classes of evidence; that it was argumentative and misleading. We think the charge, taken as a whole, a clear and sound exposition of the law. That it was argumentative is no objection. It was clearly not misleading.

The third error assigned is as to so much of the charge as instructed the jury that they might, in arriving at a verdict, allow damages for the mental and bodily suffering of the deceased. Under the Tennessee statute giving the right of action, the recovery is for the pecuniary loss sustained by those for whose use the action is given, and also for the mental and bodily suffering to the deceased. Code Tenn. (Mill. & V.) § 3134. The contention is that the jury should not, in this case, have been so instructed, because the death of deceased was instantaneous. If the proof did, as contended, show an instantaneous death, it would not follow that the deceased suffered no mental or bodily pain and agony. There is, ex necessatati, some interval between the blow and death, during which the mind may be conscious of impending death, and endure for an instant the agony of death. Whether there was or not such momentary suffering would be a question of fact, and for the jury. If there was, then, under the statute, that suffering, however short, is a matter for consideration and compensation. The evidence relied upon by counsel as showing what is called an "instantaneous death" does not support the assignment. There is

no satisfactory evidence as to how long the deceased survived his injury.    The assignment, for this reason, must be overruled.

With regard to the effect of contributory negligence the court charged the jury, in substance, that under the common-law counts of the declaration any negligence of the deceased contributing to his injury would bar a recovery.    He further charged, with regard to the duty of one about to cross a railroad track, that it was the duty of the intestate, "on approaching this railroad track, to stop and look and listen, to use and observe all proper care and caution to see whether a train was approaching or not, and, if it was coming, to await its passage."    He added "that, in respect to the common-law count in the declaration, I think you have nothing to do, and so instruct you."    The learned trial judge doubtless meant that under the evidence the deceased had not stopped and looked and listened before crossing, and that, therefore, his negligence in that respect would bar any recovery upon the common-law liability of the railroad company.    This was followed by his charge upon the count declaring upon the statutory requirements of the state.    On this subject he said:

"So, then, it comes down to this one question: Has there been a violation of the statutory requirements of the state controlling railroads in such cases as the one we have under consideration?    The law of the state provides certain things that shall be done in such cases.    If these are not done, why, then the plaintiff is entitled to recover without regard to the negligence of the intestate or person injured.    Now, the federal courts are bound to follow the decisions of the supreme court of the state in construing the statutes of the state.    The statutes controlling this branch of the case are those of the state of Tennessee, and this court is compelled to follow the decision of the supreme court in its construction of those statutes.    It is not compelled to follow it on questions of evidence, and things of that sort, which may arise in the trial of the case.    In settling those things the courts of the United States have their own rules on all questions of general commercial law and the like, and on questions of the general control and management of railroads, and they are only bound in so far as the construction of the state statutes goes to follow the decisions of the state supreme court.    In that respect this case comes to you in a very narrow compass."[1]

After a general charge upon the measure of damages, the court added:

"Then, again, as I have stated to you, and as it has been decided by the supreme court of this state, it was the duty of intestate to look out, when he approached that road, and to listen, and see whether the train was coming or not; and, if he failed to do that,—if you believe from the proof that he failed to do this,—then he was guilty of negligence, and you have a right to mitigate and reduce the amount of damages such a sum as you may think proper by reason of his negligence, and allow the plaintiff such an amount as you think she ought to recover by reason of the death of the intestate.    If the intestate did not stop and look and listen,—if he failed to do this,—you will reduce the amount of damages such an amount as you think ought to be done on account of his negligence, and then return such a verdict as you think the whole case warrants.    As I have stated, if you think the railroad has complied with the statutory requirements, and gave the signal as required, then there can be no recovery against it."

The paragraph last set out was excepted to on the following grounds:    (1) "Because it leaves to the jury as a right in the jury to consider plaintiff's contributory negligence, and does not direct

the jury that it is the defendant's right and the jury's duty to consider such contributory negligence in mitigation of damages." (2) "Because it submits to the jury the fact of contributory negligence, while such fact was undisputed."

Under the Tennessee statute before cited, every railroad company that fails to observe the precautions prescribed therein, is made responsible "for all damages to person or property, occasioned by or resulting from any accident or collision that may occur." Code Tenn. § 1299. The uniform construction put upon this statute by the supreme court of Tennessee has been that the liability of the company, where the precautions were not observed, is an abso lute statutory liability, and that the action is, therefore, not barred by the contributory negligence of the person injured, but that such contributory negligence should operate only to reduce and mitigate the damages recoverable. The earliest case reported under which the statute under consideration was construed was that of Railroad Co. v. Burke, 6 Cold. 51. As to the effect of the negligence of the plaintiff, the court said:

"The negligence of Burke, contributing to the accident, is not a bar to the action, and this by virtue of sections 1164, etc., of the Code. Generally, the negligence of the person injured by collision upon the track is not a bar to an action by him for damages, unless the railroad company show by proof that all the precautions prescribed by the Code were performed to prevent the accident." "Negligence of the person injured, which caused or contributed to cause the accident, or collision, or without which the accident or collision would not have occurred, may be taken into consideration by the jury in determining the amount of damages proper to be given for the injury. Such construction the clauses of the Code will bear, and must be given."

That case has been repeatedly followed. We cite a few instances only: Railroad Co. v. Nowlin, 1 Lea, 523; Railroad Co. v. Rush, 15 Lea, 145; Railway Co. v. Foster, 88 Tenn. 671, 13 S. W. 694, and 14 S. W. 428.

In Railroad Co. v. Rush, cited above, the opinion was by Cooper, J., who thus states the result of the previous decisions of the court concerning the circumstances under which the statute is applicable:

"This court has held that the requirements of the statute are mandatory in all cases clearly falling within its provisions, if a compliance with the requirements be possible, although it may appear that their observance would not have prevented the accident. But in view of the stringent terms of the act, and the manifest object of the legislature, the court has not extended its provisions to every case which might be embraced in its general language. We have held that the provisions apply only to the injury of persons or property by actual collision on the roadway proper, and not to the injury of passengers caused by obstruction in the roadbed. Railroad Co. v. McKenna, 7 Lea, 313; Railroad Co. v. Reidmond, 11 Lea, 205; Holder v. Railroad Co., Id. 176. They have also been held not to apply to the servants and employes of the railroad company about its depot and yards. Railroad Co. v. Robertson, 9 Heisk. 276; Haley v. Railroad Co., 7 Baxt. 239. Nor to a stranger when the company is making up and switching trains within its yards. Cox v. Railroad Co., 2 Leg. Rep. 168. And in one of the earliest cases in which these sections of the Code were construed, the court announced as one of its conclusions: 'That sections 1166, 1167, and 1168 have reference and application, so far as they relate to action for damages, to the general public, rather than to the agents and servants employed in the running of trains;' and added: 'An action will not lie in behalf of an agent or servant of that kind, whose negligence or willful act caused, or contributed to cause, the accident or collision occasioning his in-

jury.' Railroad Co. v. Burke, 6 Cold. 45. This last clause, it seems to me, strikes the true note. The statute was intended for the benefit of the general public, not for the servants of the company, and clearly not for a servant whose negligence causes, or contributed to cause, the accident. The legislature surely never intended that a railroad company, by a mere noncompliance with certain precautionary forms, made obligatory as to strangers, whether their observance would have prevented the act or not, should become liable to an employe whose plain dereliction of duty caused the accident. In such a case, to use the language of Judge McFarland in Railroad Co. v. Robertson, ut supra, the liability of the company to its agent for injuries resulting from the misconduct or negligence of that agent, must be determined, not by statute, but by common-law principles."

The congress has in plain terms prescribed that "the laws of the several states, except where the constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." Rev. St. § 721. This Tennessee statute applies to the operation of railroads within the state. "The statute is founded on a policy of double aspect,— one to guard and protect the safety of the general public, and the other to compensate the injured person,—and has its sanction in the police power of the government." Railroad Co. v. Burke, supra. Under the well-settled rule repeatedly announced by the supreme court of the United States, we do not feel that the question of the construction of this Tennessee statute as to the effect of the negligence of the deceased upon the plaintiff's right of action is an open one. In Leffingwell v. Warren, 2 Black, 599, the court said:

"The construction given to a statute of a state by the highest tribunal of such state is regarded as a part of the statute, and is as binding upon courts of the United States as the text."

To the same effect many cases could be cited. Bucher v. Railroad Co., 125 U. S. 582, 8 Sup. Ct. 974, is a review of the cases, and affords an instance where the court followed the decisions of a state court construing a statute, notwithstanding the fact that the state decisions did not meet the approval of that court. Adopting, therefore, the construction of the Tennessee statute announced by the Tennessee court, we see no error in the charge of the circuit court as to the effect of the negligence of the deceased upon the plaintiff's right of action. The only effect of his contributory negligence is in reduction of damages. That the court did not leave it to the option of the jury as to whether the damages should be reduced if deceased was guilty of negligence is, we think, clear, if all that he said on the subject be taken together. The direction "that, if the intestate did not stop and look and listen,—if he failed to do this,—you will reduce the amount of damages such an amount as you think ought to be done on account of his negligence, and then return such a verdict as you think the whole case warrants," is not subject to misconception or doubt. The case of Railroad Co. v. Nowlin, 1 Lea, is not in point. There the jury were told that they "can" or "may" take the negligence of the plaintiff into consideration. Here they were told "you will" do so. The latter was imperative, and not misleading. Under the facts of the case,

as presented by this record, we are not prepared to say that a much stronger charge as to the effect of contributory negligence would not have been appropriate. The defendant, however, made no request for stronger or more imperative language, and there is no affirmative error in what the court did say. Under such circumstances the court will not reverse. Express Co. v. Kountze, 8 Wall. 353.

The other assignments refer to paragraphs in the charge supposed to contain error. Looking to the charge as a whole, we think it was a sound exposition of the law, and the other assignments of error are overruled.

The judgment will be affirmed.