## ROGERS v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1905.)

### No. 1,382.

**1. RAILROADS—OPERATION OF TRAINS—STATUTES—CONSTRUCTION.**

An object does not appear on the "road" within Shannon's Code Tenn. §§ 1574, 1575, requiring railroads to maintain a lookout on the locomotive, and when any person or other obstruction appears on the road to sound the alarm whistle, etc., until the object is near enough to be struck by a passing train.

**2. SAME—CONTRIBUTORY NEGLIGENCE—FEDERAL COURTS—FOLLOWING STATE DECISIONS.**

Shannon's Code Tenn. §§ 1574, 1575, requiring that a lookout shall be maintained on railroad locomotives, and, when any person or other obstruction appears on the road, that the alarm whistle shall be sounded, etc., and that a failure to observe such precautions shall make the company liable for damages, having been construed by the Tennessee Supreme Court as giving damages notwithstanding contributory negligence, such construction will be followed in the federal court.

**3. SAME—APPLICATION.**

Such sections do not apply in favor of the foreman of a railroad construction gang, killed as the result of being struck by a locomotive which he had seen approaching, while he was standing near the track clearing it for the train to pass.

In Error to the Circuit Court of the United States for Eastern District of Tennessee.

This is an action for the alleged negligent killing of the husband of the plaintiff in error by collision with an engine hauling a train of cars upon the line of railway owned and operated by the defendant company. At the conclusion of all of the evidence the trial judge instructed a verdict for the railroad company. It was conceded below, and conceded here, that the plaintiff could not recover unless the Tennessee statute concerning the precautions to be observed by railroads in the operation of trains applied to workmen engaged in work upon the railway track. The deceased, John R. Rogers, was at the time of his injury a foreman in the employment of a construction company engaged in making certain additional sidings, under contract with the railroad company, at the time and place of the accident. Rogers had charge of a gang of some 15 men, and was at the time engaged in grading to put in a new switch. To do this, dirt was being moved in wheelbarrows from one side of the main track to the other, and planks were laid down across the rails to facilitate this movement. The place of work was about 6½ rails north of a switch which led into a siding. A long freight train pulled out from this siding onto the main track, going north, which was the direction in which Rogers was at work. The railroad was provided with the electric block and signal system, and, when this train came out on the track, its approach was indicated by the ringing of the signal bell. The track was also straight, and there was no obstacle to prevent the seeing of the train or the ringing of the electric signal. The deceased both heard the bell and saw the train, and gave directions to his men to clear the track. The bulk of the men were working near, but on the east or right-hand side of, the track. Rogers and one man, George Bouyer, were on the west or left-hand side, and Bouyer was the only one of the gang in position to see Rogers when he was struck. Rogers and this witness were engaged in clearing the track of dirt which had fallen upon the rails, and in the removal of the plank used to wheel the barrows across the rails. The witness had one end, that farthest from the track, and Rogers stopped to assist him by carrying the other. The evidence is not as clear as it might be as to whether Rogers was far enough from the rail at the time he undertook to thus assist Bouyer to be clear of danger of a passing train, or whether in stooping, his back being

toward the train, he placed himself unconsciously within striking distance. Bouyer, who does not seem to have always had Rogers in view, says that, when he last saw him before he was struck, he was close enough to be hit by a passing train. On the other hand, the trainmen, who seem to have been diligently upon the lookout, say that he was clearly beyond reach of the train, but stepped back as he rose with the plank, so as to throw his back near enough to be struck by the end of the pilot beam on front of the engine as it passed. Either this blow, or the concussion of his fall upon some hard substance, caused the explosion of a pistol in a side coat pocket, the ball passing through his body and killing him at once.

Rogers & Rogers, for plaintiff in error.

Edward Colston and Head & Anderson, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

It is too plain for controversy, unless the Tennessee statute applies, that, aside from all other questions, the contributory negligence of the deceased would bar any action based upon the principles of the common law. In view of this plain conclusion, the attorney for the plaintiff in error has staked his case upon the Tennessee statute, and has insisted that there was evidence from which the jury might reasonably find that the deceased was within striking distance of the approaching train from the time it came onto the main track, some six or seven rails distant from Rogers, and that the engineer or fireman should have seen his danger and sounded the alarm whistle and exerted every effort to stop the train before striking him, in obedience to the vigorous terms of the statute. The Tennessee statute requires that a lookout shall be maintained upon the locomotive, and when any person or other obstruction "appears upon the road the alarm whistle shall be sounded, the brakes put down and every possible means employed to stop the train and prevent the accident." It also provides that failure to observe these precautions shall make the company liable for all damages resulting from any accident or collision that may occur. Shannon's Code Tenn. §§ 1574, 1575. An object does not appear upon the "road," within the meaning of this statute, until it is near enough to be struck or injured by a passing train. L. N. & G. S. Rd. Co. v. Reidmond, 11 Lea, 205.

This statute has been construed by the Tennessee Supreme Court as giving damages notwithstanding the contributory negligence of the plaintiff, and that such contributory negligence goes only in mitigation of damages. Ry. Co. v. Foster, 88 Tenn. 672, 676, 13 S. W. 694, 14 S. W. 428. This construction of the statute will be followed by this court. W. & A. Rd. Co. v. Robertson, 61 Fed. 592, 9 C. C. A. 646; Byrne v. Rd. Co., 61 F. 605, 9 C. C. A. 666, 24 L. R. A. 693; C. N. O. & T. P. Ry. Co. v. Davis, 127 Fed. 933, 62 C. C. A. 565.

Assuming that there was evidence to take the case to the jury if the statute is applicable, the question is as to the correctness of the trial judge in holding that the statute had no proper application to workmen whose duties required them to be on or about the track. The Tennessee court has never regarded this statute as always and every-

where applicable.   In Railroad Co. v. Rush, 15 Lea, 145, 150, it was said:

"But in view of the stringent terms of the act and the manifest object of the Legislature, the court has not extended its provisions to every case which might be embraced in its general language.   We have held that the provisions apply only to the injury of persons or property by actual collision on the roadway proper, and not to the injury of passengers caused by obstruction in the roadbed.   Rd. Co. v. McKenna, 7 Lea, 313; Railway Co. v. Reidmond, 11 Lea, 205; Holder v. Rd. Co., 11 Lea, 176.   They have also been held not to apply to the servants and employés of the railroad company about its depots and yards.   Rd. Co. v. Robertson, 9 Heisk. 276; Haley v. Rd. Co., 7 Baxt. 239.   Nor to a stranger when the company is making up and switching trains within its yards.   Cox v. Rd. Co., 2 Leg. Rep. 168."

To the cases cited in Railroad v. Rush, we add Railroad v. Scales, 2 Lea, 688, and Railroad v. Swaney, 5 Lea, 119, 121, where it was held that, if compliance with the statute after the object appears upon the track is impossible, the statute is not applicable.   So, if reversing would seriously endanger the safety of a train, that method of stopping is excused.   Rd. v. Troxlee, 1 Lea, 520.   So it has been held as not applicable to the rear section of a freight train broken in two by accident and following by gravity.   Patton v. Ry. Co., 89 Tenn. 372, 15 S. W. 919, 12 L. R. A. 184.   The general doctrine by which the court would regard the general interest and spirit of the statute rather than its literalism was again announced in Railroad v. Pugh, 95 Tenn. 419, 32 S. W. 311, and Rd. Co. v. Rush, 15 Lea, 150, and Cox v. Rd., 2 Leg. Rep. 150, approved.   In Southern Ry. Co. v. Simpson (C. C. A.) 131 Fed. 705, we had occasion to interpret this statute, and, following the spirit of the Tennessee cases cited, held that there might be circumstances under which the statute would not be violated by operating a train in the daytime on the main road, with the engine moving backwards, where it was shown that the view of the lookout was not obstructed, and the person coming on the track at a crossing was seen as soon as he appeared, and that every precaution was observed which was possible.   It has been argued that the statute has never been held applicable except as to servants, and to movement of trains about the yards or in switching.   But this is an erroneous view of the Tennessee cases.   Thus the statute was held not applicable to movement of engines or trains within the yards of the company, although the person invoking its provision was not an employé.   Cox v. Railroad, cited above.   In Railroad v. Hicks, 89 Tenn. 301, 17 S. W. 1036, the terms of the statute were not applied to an employé traveling by velocipede on the main track in discharge of his duty as an inspector.   The court said:

"He was rightfully on the track at the time, passing from station to station, on a railway velocipede, in the same direction that the train was moving.   He was prepared to give the right of way to all trains on short notice, and it was his duty, to himself and to the company, to do so whenever he discovered the necessity for it.   Therefore the employés operating the train, on seeing him in the distance, were authorized to assume that he would surrender the track in time to save himself, and to act on this assumption so long as not refuted by the actual fact of his remaining in the way until the train came in such proximity to him as to make danger of accident probable."

That the court regarded the statute inapplicable to hands at work on the track is clear, whether in a railway yard or not, for the court said:

"The logic of the rule applied by the trial judge would require a train to be stopped as soon as in sight of section hands at work on the track, when, in fact and in reason, such hands are expected to continue at work until the train comes reasonably near, and then get out of the way without causing the train to stop at all."

The reasoning of the Tennessee Court in L. & N. Rd. v. Robertson, 9 Heisk. 276, 280, which led it to hold the statute nonapplicable to employés about the yards of the company, is as applicable to persons whose duty requires them to engage in work upon the tracks of a company, whether in the yards or on the main road, and whether such persons be the immediate employés of the company, or the servants of a contractor engaged in work for the company upon its track. Speaking for the court, Judge McFarland said:

"This statute in terms makes no exceptions, but it seems to us unreasonable and utterly impracticable to apply it strictly to the running of engines and cars about the depots or yards of railroads, and in relation to the hands or employés of the road, who are moving across the track in discharge of their several duties. To require that whenever any one of these employés shall be upon the track, when the engine is running at the rate of three or four miles an hour, that the whistle shall be sounded, the brakes put down, and every effort used to stop, seems to us not only to be utterly unnecessary, but also that it would render it almost impracticable to make the necessary movements of the engines and cars about the yard. This record discloses that engines passed over these tracks a great number of times daily, and this we all know from common observation. The duties of the employés require them to cross or walk upon the track often, and sometimes close to a moving engine. They become familiar with this, and possibly to some extent indifferent to their danger. They seem conscious of their ability to cross the track close to a moving engine without danger. They are familiar with the running of the trains, and with the rules and regulations. In this case it appears that the deceased had been for some time in the employ of the company, and engaged in the very duty he was that day discharging. It was the daily custom for the engine and tender to back out in the same manner it did that day. The ringing of the bell was the signal used in the yard that the engine was in motion. All this was well known to the deceased. Upon this state of facts, we think it was error to make the liability of the company dependent upon their proving that they had strictly complied with these provisions of the statute above quoted. We think the statute was not intended to apply to a case of this sort; but as between its own employés, and about the depot, where trains are being made up and engines and cars switched from one track to another—in regard to the hands engaged in these several duties—we think different rules may be adopted. We do not mean to lessen in any degree the rigor of the statute as applied to the general public, or in any case where it was intended to apply; nor do we intend to intimate that in a case like the present the company may not be held liable for injuries resulting from the misconduct or negligence of its agents. But we think that that liability is not to be determined by the statute referred to, but by the general common-law principle applicable in such cases."

In the subsequent case of Cox v. Railroad, cited above, the court extended this reasoning to the case of a stranger.

The fact that the railroad company was having construction and repair work done under a contract by which it agreed to pay by the square yard for dirt removed from one side to the other of its track for the purpose of making a fill does not change the principle applicable if

the same work had been done by its own section hands. The work Rogers undertook to do was upon and alongside the railway track, and his duty required him to go on and about the track, upon which trains were being constantly operated. To hold that, every time a railway train came in sight of such a gang of workmen, the whistle must be sounded and every effort made to stop the train, in face of the fact that it was the duty of these men to keep the track clear for passing trains, would be to extend a most severe statute to a case where the reason of the thing would not apply. We see no error in the action of the trial judge in holding the situation to be one to which the statute had no application.

Judgment affirmed.