## FELTON v. NEWPORT.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

### No. 606.

1. APPEAL—NECESSITY OF EXCEPTION—TESTIMONY ADMITTED SUBJECT TO OBJECTION.

An assignment of error will not lie upon the admission of testimony, unless the ruling is excepted to; and where evidence is admitted subject to objection made, and no exception is taken at the time, the matter must be again called up, and a final ruling obtained, and an exception taken thereto.

2. RAILROADS—INJURY TO PERSON ON TRACK—TRESPASSERS.

Under the provision of Shannon's Code Tenn. § 1574, which makes a railroad company liable for an injury to a person on its track, where it fails to keep a lookout on the engine as therein required, it is not absolved from such duty, nor from liability, because the person injured was a trespasser.

3. APPEAL—SUFFICIENCY OF EXCEPTION—REFUSAL OF REQUESTS FOR INSTRUCTIONS.

A general exception to the refusal of the court to give a series of instructions requested is not good, unless all were proper.

4. SAME—EXCEPTION TO PORTION OF CHARGE.

An exception to that part of the charge of the court which relates to a particular subject is sufficiently specific to authorize a review of that

part, where it is entire, and contains but a single proposition, especially where the matter involved is discussed by counsel for defendant in error without objection to the sufficiency of the exception.

**5. RAILROADS — INJURY TO PERSON ON TRACK — FAILURE TO GIVE SIGNALS — TENNESSEE STATUTE.**

The word "town," as used in Shannon's Code Tenn. § 1574, subd. **3**, requiring the bell or whistle to be sounded on the approach of a railroad train to a "city or town," and at short intervals while passing through such city or town, having been construed by the supreme court of the state to mean "incorporated town," in an action for the killing of a person on the track, based on the alleged failure to give such signals, proof of the incorporation of the town in which the injury occurred is essential to the plaintiff's case; and where the record of incorporation, which is the best evidence of the fact, is not introduced, but evidence tending to show user of corporate franchises by the town is admitted without objection, conceding such evidence to be competent in such case to raise a presumption of incorporation, the question of its sufficiency is one for the jury, and not for the court; and an instruction is erroneous which makes the defendant liable, under the further provisions of the statute, if it failed to give the required signals, without requiring the jury to first find the fact of incorporation.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This action was brought, under a statute of Tennessee giving a remedy in such cases, by Rhoda Newport, the widow of J. H. Newport, deceased, in behalf of herself and her children, who were also the children of the deceased, against Samuel M. Felton, as receiver of the Cincinnati, New Orleans & Texas Pacific Railway Company, to recover damages arising from the death of her husband, resulting from alleged negligence in the operation of the railroad of said company while it was in the hands of the defendant as receiver. The declaration contained two counts; the first being founded upon the common law, and the second upon the special provisions of section 1574 of Shannon's Code of Tennessee, relating to the running of trains upon railroads. The substance of the first count was that one of the defendant's trains negligently ran down and killed the deceased while he was upon the defendant's railroad track, in the town of Helenwood, Tenn. In the second count it was alleged that the injury occurred in an incorporated town (Helenwood), and resulted from the failure of the defendant to observe the precautions of keeping a lookout upon the engine, sounding the bell or whistle, and taking certain measures for stopping the train when the deceased appeared upon the track, as required by the statute above mentioned. The plea was the general issue. The facts developed on the trial were these: J. H. Newport, the deceased, a man about 37 years of age, resided at Huntsville, some five miles distant from Helenwood, where the accident occurred. He left home on the afternoon of February 14, 1896. The next that was seen of him was at Helenwood, about 8 o'clock in the evening of the same day, in company with a drunken desperado by the name of Terry. The last time that he was seen alive was at the window of the station house of the defendant's railroad at Helenwood, when he was observed by the telegraph operator, and was then intoxicated. This was at 8:30 or 9 o'clock that evening. He was found dead on the railroad track about 500 feet north of the depot the next morning about 6 o'clock. His body was badly mangled. Its condition, and the fragments thereof, and spots of blood along the track, indicated that the body had been passed over by several trains, and pushed or carried over a space of 200 feet, to where the body was found. About midway of this space, one of the feet was found in a frog. Six trains passed over the road after Newport was last seen, and before his body was found, none of which stopped at Helenwood, but went through at full speed. The first three went north, and the last three south. After the first two trains had gone north, and at half past 11 o'clock, two men were noticed by the station agent coming south from the locality where **Newport's body was** found. They were

walking fast, and, when they saw that they were observed, shied off, and passed by, further away. It was too dark to identify them. A brother-in-law of Newport lived a half mile north of the station, and the usual way of going to his place was by the railway, or a path alongside of it. The men upon the engines of the several trains which passed that night testified that the proper lookout was maintained, and that no one saw Newport, or knew of the accident; and no witness testified to the contrary. The foregoing are all the circumstances known which indicate in what manner Newport was killed, or by what, if any, train he was killed. Upon the trial, the plaintiff, against the objection of the defendant, was allowed to prove that Helenwood was an incorporated town, as alleged in the declaration, by parol. Evidence of the assumption and exercise of some of the franchises of incorporated towns was also given. During the trial the presiding judge asked several questions of the witnesses in relation to the circumstances, and errors are assigned upon some of these. At the close of the plaintiff's testimony, counsel for defendant moved the court to direct a verdict for the defendant. The motion was denied, but the court suggested that it might be renewed upon the close of the testimony. The defendant then adduced evidence by way of defense. At the close of all the evidence, counsel for defendant renewed his motion for a direction to the jury to find a verdict in his favor. The court replied that the motion might be argued in addressing the jury. Thereupon the arguments upon the facts to the jury proceeded. The court, in its charge to the jury, instructed them that the plaintiff was not entitled to recover upon the first count, it being shown that the plaintiff was guilty of gross negligence, but, overruling the motion for direct instructions, said that it would be left to them to determine whether the plaintiff was entitled to recover upon the second count, being the one founded upon the statute. The court thereupon proceeded to state the provisions of the statute above referred to, and deemed applicable to the case, and then explained their bearing upon the facts of the case, as the jury might find them. The particular provisions of the statute in question, and the instructions of the court to the jury thereon, are stated in the opinion which follows, as are also certain requests preferred by the defendant's counsel, and refused by the court. An exception was taken to the charge of the court in regard to the precautions required of the defendant by the statute in the running of trains, and an exception was also taken to the refusal of the defendant's requests. The jury returned a verdict for the plaintiff in the sum of $3,000. A motion for a new trial was made and refused, except upon the failure of the plaintiff to remit the sum of $500. A remittitur was filed, and judgment entered for $2,500. The defendant brings the case here on writ of error.

Charles R. Head, for plaintiff in error.

Jerome Templeton, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having stated the case as above, delivered the opinion of the court.

The first question presented by the record relates to the ruling of the court in reference to the proof offered to show that Helenwood, within the limits of which the injury is alleged to have occurred, was an incorporated town. This was a material fact in determining the liability of the defendant upon the count on which the verdict and judgment were founded; for, as will be seen upon reading the statute which is quoted below, an obligation to observe certain special precautions is imposed upon railroad companies while they are running their trains through cities and incorporated towns. The question arose in this way: Counsel for plaintiff asked the witness J. J. Newport whether on February 14, 1896, Helenwood was an incor-

porated town, or not. The question was objected to, no ground for the objection being stated. The court asked counsel for plaintiff, "Can you not show that in a better way than that?" to which counsel replied, "Yes; we could have got a copy of the record from the county court." The court then allowed the witness to answer "just for the minute, under the objection." The witness answered, "It was." The county court record was not produced, nor was this ruling of the court again referred to. There was no exception taken to the ruling at any time. The assignment of error cannot, therefore, be sustained. The rule is perfectly well settled, as the multitude of authorities collected in 8 Enc. Pl. & Prac., p. 212 et seq., will show. No exception being taken at the time, counsel should have called the matter up later, and obtained a final ruling. Thereupon, if it was adverse, and the evidence allowed to stand, an exception could have been taken, if it was desired. It is true, no ground was stated for the objection; but it is apparent that the court and opposing counsel fully understood the reason for making it, and that is the object of the rule requiring the grounds to be stated.

It is also assigned as error that the court admitted evidence of certain facts tending to show that there was an assumption and exercise of some of the franchises of an incorporated town by the residents of Helenwood, such as the having a mayor, marshal, and "town squire." But to this no objection whatever was interposed. There is nothing to support an assignment of error upon it. The same disposition must be made of other assignments of error, and for the same reason. Among them are such as refer to the questions asked of witnesses by the court in regard to the matters they were testifying about. It is needless to particularize. No complaint was made at the trial, nor was any exception taken.

The defendant's counsel asked for five special instructions. Some were refused, and some granted in part only. The bill of exceptions states that, "to such portions of the above requests which were refused by the court, the defendant, by counsel, duly excepted to the action of the court at the time." Some parts of these requests were proper to be given; others were not. Of the latter was the first request, which was as follows:

"If J. H. Newport was drunk, and was voluntarily upon the track without license of the defendant, then he was a trespasser, and the defendant owed him no duty or care, except that they must not willfully or wantonly hurt or kill him: and the plaintiff, under such circumstances, cannot recover, unless it appears that the defendant, through his agents, did willfully or wantonly kill him."

The contrary of this, where the action is founded upon the statute, was distinctly held by the supreme court of Tennessee in Patton v. Railway Co., 89 Tenn. 370, 15 S. W. 919. If the request had been limited to the first count, it might have been proper; but it was not so limited, and it would have been error to have granted it as presented. The rule is that a general exception to the refusal to give a series of requests is not good, unless all were proper. The assignments of error founded upon this general exception are therefore untenable.

.But there was one exception—and this was one which touched the substance of the case upon which the plaintiff recovered—which we think was sufficiently specific. This was an exception to that part of the charge of the court which stated to the jury what were the precautions prescribed by the statute which the defendant was bound to observe. The charge upon this subject was entire, and bound up in a single proposition. If it was erroneous in any substantial particular, it would seem that the exception would reach the error, especially where it pervades the whole instruction given upon the subject to which the exception relates. Edgington v. U. S., 164 U. S. 361, 365, 17 Sup. Ct. 72; Coal Co. v. Johnson, 12 U. S. App. 490, 6 C. C. A. 148, 56 Fed. 810. The alleged error is sufficiently assigned within the ruling of this court in Tefft v. Stern, 43 U. S. App. 442, 21 C. C. A. 73, and 74 Fed. 755, where it was held that a somewhat general assignment of error would be regarded as sufficient to cover a specific error which was included in the larger assignment, where the matter involved had been fully discussed by the defendant in error, and no complaint had been made about the sufficiency of the assignment.

Section 1574, Shannon's Code Tenn., to which reference has been made in the preceding statement of facts, and the two following sections, are as follows (omitting subsections 1 and 2, which are not material here):

"Sec. 1574. Accidents on Railroads; Precautions to Prevent. In order to prevent accidents upon railroads, the following precautions shall be observed: * * * (3) On approaching a city or town, the bell or whistle shall be sounded when the train is at a distance of one mile, and at short intervals until it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when the train starts, and at intervals till it has left the corporate limits. (4) Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident." Laws 1857–58, c. 44, § 3.

"Sec. 1575. Failure to Observe Precautions. Every railroad company that fails to observe these precautions,.or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur." Laws 1855–56, c. 94, § 9.

"Sec. 1576. Observance of. No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damage done to person or property on its road. The proof that it has observed said precautions shall be upon the company." Id. § 10.

It was held in Webb v. Railroad Co., 88 Tenn. 122, 12 S. W. 428, that "town," in subsection 3, above quoted, means an incorporated town.

Upon the subject to which the exception which we are considering relates, the court, after stating to the jury the third and fourth subsections of section 1574, put the question of the plaintiff's right to recover in this way:

"Now, the case comes to you on the fact, if you find that the train killed the man, of whether or not the railroad was at the time of the accident observing the things which this statute requires of it, namely, that it was sounding the bell at short intervals from the time it got within a mile of the city until it left it, and whether or not it had some one on the lookout ahead—

'always on the lookout' means at the time of the accident, and not elsewhere, nor at different times—some one on the lookout ahead, and in a position to see the track, and see an animal or person on the track, or within striking distance on either side, that would be hit by the train. That is what is meant. If you find that the train killed the deceased, and in addition find that it was complying with this statute, it is nevertheless not liable. Whereas, if you find that the train killed the deceased, and that the company was not at the time observing these requirements, then the company is liable; and this without regard to the negligence of the deceased, so far as his right to recover is concerned. If the company did not ring the bell or sound the whistle, or did not have some one on the locomotive on the lookout ahead,— which means in a position to see and observe, with a design to see anything if it occurred; on the alert; being watchful— If they either did not sound the whistle, or did not ring the bell, or did not have some one on the lookout, then the law makes it liable, regardless of whether the plaintiff could have prevented the accident or not."

The substance of this instruction was subsequently repeated, and the court then said:

"If you are satisfied by a preponderance of the testimony that the defendant did not observe the provisions of the statute, and are further satisfied that the train killed him, why, then, your verdict should be for the plaintiff. If you are not so satisfied, then you should find for the defendant."

Thus, it is seen that the court made no discrimination between the precautions required by subsections 3 and 4, respectively, but put the defendant under the responsibility of having complied with all the requirements of both subsections. But the requirements of subsection 3 did not rest upon the defendant, unless the accident occurred in an incorporated town or city. If it had been conclusively established that Helenwood was an incorporated town, the obligations of subsection 3 would have rested upon the defendant. But the question whether it was incorporated was an open one, and should have been submitted to the jury under proper instructions; and the instructions of the court above quoted should have been qualified by making it a condition to the application of subsection 3 that the jury should find from the evidence that the place was in a town which had been incorporated, and they should have been told that, if they did not so find, the defendant was not required to observe the precautions imposed by subsection 3. It is true that the court, in stating this subsection, to the jury explained, said that "under that section it is the law that if, instead of stopping at the station, the train runs through an incorporated town, why, then, it must ring all the way through." But this was evidently said to point out to the jury, more particularly than the language of the statute did, the duty of the railroad company in ringing the bell when no stop is made at the station; and, if it suggested that the town must be incorporated, it did so only obscurely, and not in a way to attract the attention of the jury to the issue upon that point.

It was necessary for the plaintiff to prove that Helenwood was an incorporated town, before there could be a recovery upon the ground that the defendant neglected to ring the bell or sound the whistle all the way through the town. How must such fact be proven? As the question arose collaterally, we should have no hesitation in holding, if there were no statute affecting the general rule, that, though the charter (in this case the record of incorporation) might be the most

satisfactory proof, yet that it might be shown by evidence of long-con-
tinued user of the franchises peculiar to an incorporated town.    See
Ashley v. Board, 16 U. S. App. 656–658, 8 C. C. A. 455, 60 Fed. 55.
But the statute of Tennessee contains some peculiar language, cre-
ating absolute conditions to the validity of attempted organizations
thereunder, which, as construed by the supreme court of Tennessee,
present some difficulty in applying the general rule to the case be-
fore us.    Shannon's Code, pt. 1, tit. 9, c. 1, art. 1, prescribes the
method by which towns may be incorporated.    A list of voters must
be prepared, 14 at least of whom must make application for a char-
ter.    The list must be verified, and deposited with the county clerk
or justice of the peace.    Notice of the application must be published
and posted.    Thirty days thereafter the sheriff of the county, upon
giving 10 days' notice, holds an election to ascertain the will of the
voters in regard to incorporating, whereupon he makes a return to
the county clerk, indicating the result.    If two-thirds of the votes
are in favor of incorporating, the county clerk makes a certificate to
that effect, and transmits it to the secretary of state, who thereupon
issues a certificate or "charter of incorporation," and this is to be
registered in the county clerk's office.    Section 1897 is as follows:

"Sec. 1897. Sheriff's Certificate to be Indorsed on Charter and Registered.
But no application or charter of incorporation for such town shall be regis-
tered, or, if registered, such application or charter shall be of no force or
effect whatever, unless the certificate of the sheriff or deputy holding said
election shall be indorsed on the application and registered with it, and shall
show the number of voters on said list, and that at least two-thirds thereof
have voted in favor of the incorporation of said town."

Section 1899 reads thus:

"Sec. 1899. Registration of, Conclusive. After such registration the legal
incorporation of such municipality shall not be collaterally questioned."

In the case of Ruohs v. Athens, 91 Tenn. 20, 18 S. W. 400, the plain-
tiff brought suit on bonds issued by the defendant as an incorporated
town.    The defendant pleaded that it was not an incorporated town.
It was shown that there had been proceedings for that purpose, and
the record from the county clerk was produced.    Evidence was also
given to show that for some years prior to the issue of the bonds the
defendant was acting as a corporation.    But in the charter record no
certificate of the sheriff, showing an election, appeared to have been
indorsed upon the application.    The supreme court of the state held
that "the charter was therefore void, by express provision of the stat-
ute," and that "it consequently followed that the town of Athens
was not a legally incorporated town when it issued the bonds in
question."    Proceeding, the court said:

"This brings us to the most serious question in the case,—whether the de-
fendant can now rely on the defense of no corporate existence; having acted
as a corporation, and issued the bonds while in apparent exercise of legal
corporate power.    This is a question of much difficulty.    There is a line of
most respectable cases on the negative of the proposition stated, but in none
of them is the question determined that a corporation attempting to organize
under a general law, which declares that the charter shall be void for non-
compliance with special provisions thereof, shall be held, by estoppel or other-
wise, to be a corporation.    But, whatever may be the rule held elsewhere,
it is settled here, in cases most maturely considered, that a body or corpo-

ration having no legal existence has no legal power to issue bonds or obligations of a binding character, and that such body or corporation does not obtain a de facto status, so as to require a direct proceeding by the state to avoid its existence or its acts."

—And, in conclusion, held the bonds were void. The distinct holding of the court was that under that statute a town had no legal existence, except upon compliance with the provisions of the statute, and would not become such by the assumption and exercise of the franchises of a town. A case involving a similar question came before the court of appeal in England, under the companies act of 1862. In re Padstow Total Loss & Collision Ins. Ass'n, 20 Ch. Div. 137. The act contained provisions for the formation of companies and for registration, and by the fourth section declared that no company consisting of more than 20 persons should be thereafter formed for the purpose of carrying on a business of the kind in which the Padstow Association was engaged, unless it was registered under the act. The association consisted of more than 20 members, and had not been registered, but had been doing business for several years. The question was whether it had such a legal status as that it could be wound up. It was held that the company had no legal existence, and was therefore not a proper subject for such proceedings. Brett, L. J., in delivering judgment, after stating the contention for the petitioners, said:

"On the other side, I understand the argument to be that the circumstances under which this association was attempted to be formed were such as to bring it within the fourth section, which says that such an association or company or partnership as this shall not be formed, and that, therefore, there never, in this case, existed any association or partnership or company which the law can recognize as such, or with which the law can in any way deal. Now, if the case is within the fourth section, the words of that section being imperative and prohibitory and negative, it seems to me that the law can take no cognizance of the existence of such an association, and that the absence of notice to the petitioners of these facts cannot enable the law to act in their favor with regard to such an association, as if it existed, when the law has said it shall not exist."

But the question remains whether a lawful organization may not be presumed from proof of the user of the franchises of an incorporated town for a long period of time. This question was not directly decided in Ruohs v. Athens. In that case the record of incorporation was produced, and the lack of compliance with the statute appeared upon its face. Having regard to the purpose of the statute prescribing the precautions to be taken in running railroad trains, and seeing that the dangers to be avoided are the same, whether the assumed corporate character of the town rests upon a lawful basis or not, we should be inclined to hold, in the absence of countervailing reasons, that presumptive evidence of due incorporation would be competent in cases of this character. But the ultimate fact to be proven is the fact of incorporation, and the statute has provided for a record thereof. Obviously, this record is the best evidence of the fact to be proven. It is made easily accessible. If it is lost or destroyed, secondary evidence would doubtless be admissible. The court would take judicial notice of the statute under which incorporation might take place, but the question whether in a given instance it has taken

place is one of fact for the jury. City of Hopkins v. Kansas City, St. J., etc., R. Co., 79 Mo. 98; Bassett v. Porter, 4 Cush. 487; Bow v. Allenstown, 34 N. H. 351; 1 Dill. Mun. Corp. (3d Ed.) § 84. Judge Dillon states the rule thus:

"And where there is no direct or record evidence that a place has been incorporated, and it is sought to show the fact of incorporation from circumstantial evidence, the question is ordinarily for the jury, and not for the court; that is, the jury, under the circumstances, determine whether there is or is not sufficient ground to presume a charter or act of incorporation, or the due establishment and existence of a corporate district under some general act."

In this case there was no record evidence of incorporation, but, as we have seen, the court permitted oral evidence to be given of certain facts from which incorporation might be inferred, and no exception was taken thereto. There was no documentary or written evidence of any kind to support the allegation. The facts proven tending to make out that the town was incorporated were fragmentary and inconclusive, and the proof of its boundaries was not, as we should think, very satisfactory. Perhaps they might satisfy the jury, but the court could not say, as a matter of law, that the ultimate fact was established in favor of the plaintiff.

Counsel for the defendant in error calls our attention to an act of assembly, passed March 19, 1897, to repeal the charter of Helenwood, and relies upon this as a legislative recognition of its previous incorporation. Assuming that this act is one of which the court should take judicial notice, there are two answers to be given to the contention of counsel: In the first place, the repealing act furnishes no evidence of the date of the supposed incorporation. The accident happened in February, 1896. But, secondly, the question of fault or no fault must be determined by the conditions existing at the time of the accident. If, with reference to those conditions, the defendant was not guilty of negligence, he could not be converted into a wrong-doer by a subsequent act of assembly.

It is strenuously insisted in behalf of the plaintiff in error that the proof given on the trial that the death of the plaintiff's husband occurred in such a way as to render the receiver responsible therefor was too vague and conjectural to justify the verdict. But as the judgment must be reversed for the error we have indicated, and the evidence may be different on a new trial, we forbear to discuss that subject. For the same reason, we do not consider the merits of the complaint that the court ignored, in its charge to the jury, the theory of the defendant below, that Newport was probably murdered while in an intoxicated condition, and his body put upon the track to obscure the evidence of it. The judgment is reversed, with costs, and a new trial will be awarded in the court below.