## CURTIS v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1916.)

No. 2731.

1. RAILROADS ☞320—OPERATION—CARE—STATUTE.

Shannon's Code Tenn. §§ 1574–1576, which arbitrarily require certain precautions to be taken when any obstruction appears on the railroad tracks, and declare absolute liability in the absence of such precautions, apply only when the person or obstruction appears on the track in front of an engine or within lateral striking distance before the collision occurs, and do not apply where the person first comes within striking distance at a point which the head of the engine has already passed, or into danger at the very instant of the engine's arrival.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1014–1016, 1019; Dec. Dig. ☞320.]

2. RAILROADS ☞346(1)—CROSSING ACCIDENTS—ACTIONS—BURDEN OF PROOF.

In an action under Shannon's Code Tenn. §§ 1574–1576, for the death of one run down by a train, plaintiff, who contended that the railroad company did not take the required precautions has the burden of showing that his intestate was upon the tracks ahead of the engine.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1117; Dec. Dig. ☞346(1).]

3. RAILROADS ☞348(1)—CROSSING ACCIDENTS—EVIDENCE—SUFFICIENCY.

In an action for the death of plaintiff's intestate, who was killed at a railroad crossing, where plaintiff relied on the failure of the railroad company to take the precautions by Shannon's Code Tenn. §§ 1574–1576, evidence held insufficient to show that deceased was upon the tracks in front of the engine so that the statute would apply.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138, 1140, 1141; Dec. Dig. ☞348(1).]

4. RAILROADS ☞327(2)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE.

Where the view was only partially obstructed and, had he looked, save in two places, one where there was a woodpile and the other where there was a cut deceased must have seen the train, which was lighted, he was, it appearing that according to schedule the train was expected about that time, guilty of contributory negligence as a matter of law in driving onto

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the tracks just in front of the train, or so close to the tracks that his horse became frightened.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1044; Dec. Dig. ☞327(2).]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by C. D. Curtis, administrator of Charles C. Curtis, deceased, against the Louisville & Nashville Railroad Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

G. W. Pickle, of Knoxville, Tenn., for plaintiff in error.

Jas. G. Johnson, of Knoxville, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Charles C. Curtis was killed by a Louisville & Nashville train at a grade crossing in Eastern Tennessee, at 10 o'clock on an evening of September. This action was brought by his administrator, to recover for the death, under the Tennessee statute. There was the requisite diversity of citizenship to give jurisdiction; but on the trial the court below directed a verdict for the defendant, and the administrator brings error.

[1, 2] The Tennessee statutes (Shannon's Code, §§ 1574–1576, and subdivision 4 of section 1574) arbitrarily require certain precautions to be taken, when any "obstruction appears upon the road," and declare an absolute liability in the absence of such required precautions. It is the settled Tennessee construction of this statute that it is to be applied only when the person or other obstruction appears upon the track in front of the engine or within lateral striking distance before the collision occurs, and that it does not apply in a case where the person first comes within the striking distance at a point which the head of the engine has already passed, or at the very instant of the engine's arrival (see reviews by this court of the Tennessee cases in Railway v. Truett, 111 Fed. 876, 50 C. C. A. 442; Railroad v. Sutton, 179 Fed. 471, 103 C. C. A. 51; Railway v. Koger, 219 Fed. 702, 135 C. C. A. 374); also that, in order to make out a case under the statute, the burden is on the plaintiff to show that the obstruction did appear on the track ahead of the engine (Railway v. Hawk [C. C. A. 6] 160 Fed. 348, 353, 87 C. C. A. 300, and Tennessee cases cited).

[3] The first count of the declaration in this case was based upon this statute. There was no surviving eyewitness of the accident. Curtis was in a buggy driving a single horse, going east along the highway at about right angles to the railroad. The north-bound train reached the crossing at about the same time. The horse and buggy and Curtis were found at different spots, but all west of and within a few feet of the railroad track, and within a few feet north of the center of the highway. The only mark found on the engine indicating a collision was that the flagstaff holder, near the left-hand end of the pilot beam, was bent. The fireman, looking up after putting in coal, caught a glimpse of the horse apparently rearing away from the side of the engine. These facts as to the flagstaff and as to what the fireman saw,

coupled with the inference to be drawn from the location of the bodies, constitute the only evidence on the issue whether the horse was upon or close to the track ahead of the engine, so as to make it possible to say that the horse constituted an "obstruction upon the track" within the meaning of this statute. We are quite clear that these facts, coupled with all permissible inferences, cannot meet the burden of proof which rested upon plaintiff on this issue. Remembering that the horse was going eastwardly, these facts and inferences, separately and collectively, tend to determine the issue in the negative, viz., that the horse was not upon the track or within striking lateral distance until, at the earliest, the same instant when the front of the engine arrived at the same spot. So far as this count is concerned, the direction of verdict must be sustained.

[4] The court below found that the undisputed facts disclosed such contributory negligence as would bar any right of recovery at common law under the second count, and so found it unnecessary to decide whether there was any evidence tending to show negligence by the railroad. If this did exist, it consisted in not giving the customary signals by bell and whistle when approaching the crossing. We assume, without deciding, that the evidence tended to show a breach of duty by the railroad in this respect, and so we come to the existence of contributory negligence as the controlling question. This requires some further statement of facts. About a half mile south of the crossing, the railroad emerged from a deep cut. The railroad track at this point was 8 feet higher than at the highway crossing, and, between the two points, was straight. The view of a north-bound train, by a person going east on the highway, for 300 feet toward the crossing was wholly unobstructed for this half mile, except for two things. About 300 feet west of the crossing, there began, on the south of the highway, a slight rise or hill which reached its highest point east of the railroad. This led to a cut by both highway and railroad, and a resulting embankment on the south of the highway and west of the railroad. This bank was highest along the edge of the railroad cut and this edge was 42 feet from the nearest rail. A supposedly accurate survey shows that the bank at the edge was 4½ feet high; the extremest supposition or estimate by plaintiff's witnesses is that it was 6 feet high. From this height it ran down to nothing toward the west, and also ran down to nothing at the south, at a distance of some 300 or 400 feet. Along the top of this bank, commencing 50 to 100 feet south of the highway, was a pile of cordwood, 5 or 6 feet high, 4 or 5 feet wide, and running along the edge of the bank parallel with the track for a distance the highest estimate of which is 60 feet. There is also a suggestion in the argument that weeds were growing along the top of the bank.

The trial court considered only the situation arising after Curtis emerged from behind whatever obstruction was presented by this bank and woodpile, and finding that there was then a distance of 42 feet between the rail and Curtis, or say 25 feet between his horse's head and the overhang of the train, concluded that the opportunity to see the approaching train was so ample as to require the inference that Curtis had not exercised due care. If he had been on foot, this

result would probably not be questioned; but it is suggested that he may have lost control over a frightened horse, and so have been in a situation analogous to that disclosed by Railway v. Truett, supra. There is no testimony that the horse was likely to be frightened. Plaintiff's proof is directly to the contrary. The facts differ materially from those in the Truett Case, and it is difficult, if not impossible, to distinguish the circumstances of the present case from those of Railroad v. Freeman, 174 U. S. 381, 19 Sup. Ct. 763, 43 L. Ed. 1014, in which the Supreme Court held that the inference of contributory negligence was conclusively established. However, it is not necessary to rest that inference upon what occurred after passing the 42–foot line. Curtis lived within 100 feet of this crossing, east of the railroad; he was entirely familiar with the crossing and with the train schedule; this was a regular train, running at its usual speed, 30 to 40 miles an hour, and was practically on time. Curtis was therefore bound in unusual degree to be on the lookout for this train at this time. He was riding in an open buggy, and his eyes would be well above the highest point of the bank. The engine carried a headlight, in good condition and burning brightly, and ample to be seen by him; the train, 500 feet long, consisting of both day coaches and Pullmans, was lighted in the usual way. Both the engine headlight and the upper part of the cars would have been exposed to Curtis' view constantly over the top of the bank, and, indeed, fully exposed, except for the less than one train length which the bank extended south from the highway. There is no proof whatever that there were any weeds on the bank at this time—proof either specifically or that their presence was customary. The only proof is from plaintiff's witness, who says that he does not know whether there were any weeds at this time, but that it was customary to cut them down in August, and this was in September. Clearly, the woodpile is the only thing which could have obstructed Curtis' view, and it is impossible to figure out how this could have obscured his view of the train, except momentarily, while Curtis was moving east and the train going north. Further, a train moving at the speed of this train, even if running with the steam shut off, makes a great noise; there was nothing else, unless the rattle of the moving buggy wheels, to cover up this noise; and although the wind was blowing from the north, yet plaintiff's witnesses, situated still further north, clearly heard the roar of this particular train as it came out of the cut and came on toward the crossing. They remember this as distinctly as they remember that the whistle was not blown.

Putting together all the testimony and allowable inferences, one of three conclusions is compelled: First, that Curtis saw the train coming, and, misjudging its distance, tried to cross ahead of it, demonstrating his negligence; second, that he saw the train coming, and stopped and waited too close to the track, so that the horse was hit by the train or drawn against the train, indicating not only his lack of care, but also that the absence of whistle or bell was of no importance; or, third, that he failed during all the time of approaching the track for 300 feet, to use any care in either looking or listening for this train. We must consider this case within the rules which the Supreme Court has de-

clared in Railroad v. Houston, 95 U. S. 697, 24 L. Ed. 542, Schofield v. Railway, 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224, and in Railroad v. Freeman, supra, which are stated by Judge Hook, for the Eighth Circuit Court of Appeals, in Tomlinson v. Railroad, 134 Fed. 233, 67 C. C. A. 218, and which we have applied in (e. g.) Kallmerten v. Cowen, 111 Fed. 297, 49 C. C. A. 346, and Railroad v. Hurlburt, 221 Fed. 907, 137 C. C. A. 477.

The judgment is affirmed.