## SOUTHERN RY. CO. v. MATTHEWS. *

Circuit Court of Appeals, Sixth Circuit. November 10, 1928.

No. 4950.

*Certiorari denied, 49 S. Ct. ——, 73 L. Ed. ——.

Knappen, Circuit Judge, dissenting.

J. A. Susong, of Greeneville, Tenn. (Susong, Susong & Parvin, of Greeneville, Tenn., on the brief), for plaintiff in error.

S. J. Milligan, of Greeneville, Tenn. (J. E. Biddle, of Greeneville, Tenn., on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. Plaintiff's decedent was killed by a railroad train within the city of Greeneville, Tenn., and in this action plaintiff recovered damages therefor. The train was going into the city from the east. At a point a quarter of a mile east of the station the tracks are crossed by Rankin street. For a considerable distance in both directions there is a passing track parallel to the main track, the near rails of the two tracks being nine feet apart and the ends of the ties being five feet from each other. In mid-afternoon Dixon was seen on the Rankin street crossing, and at a point midway between the tracks he stepped down from the crossing and walked to the east, facing the approaching train, which was in plain sight for half a mile. Whether he came on at Rankin street, or had already been walking between the tracks for some distance, does not appear. As he met the train, he continued to walk in the space between the tracks, and 250 feet of the train— the engine, tender and two mail coaches— passed by him as he thus continued; and after he met the head of the engine he must have walked 15 to 25 feet. At this point he was seen to go under the train, and was killed.

The action was planted in part upon common-law liability and in part upon a statute. As to the counts based merely on negligence, the court instructed the jury for defendant; and this instruction was plainly right. The statutory counts were submitted. The statute involved is known as the "Statutory Precautions Law," and the presently material parts are quoted in the margin.[1] Liability was claimed under subsections 3 and 4. The nontaking of the emergency measures of subsection 4 is conceded; there was substantial evidence of noncompliance with subsection 3.

---

[1] Shannon's Code, § 1574 (chapter 94, Laws of 1855–56). *"Accidents on railroads, precautions to prevent.* In order to prevent accidents upon railroads, the following precautions shall be observed. * * *

"3. On approaching a city or town, the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals till it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when the train starts, and at intervals till it has left the corporate limits. * * *

"4. Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident. [Added in 1857–58, Ch. 44.]

"Sec. 1575. *Failure to observe precautions.* * * * Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur.

"Sec. 1576. *Observance of.* * * * No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damage done to person or property on its road. The proof that it has observed said precautions shall be upon the company."

Beginning soon after the passage of the act, it has been applied by the Tennessee Supreme Court in very numerous cases, as shown by the annotations in Shannon's Code. It has also been the subject of careful study and analysis, or at least of application, by this court in the cases cited in the margin.[2] Its history in the Tennessee court has been one of uncertainty. At times it has been applied with strictness and the judges have said they were not concerned with the harshness or unreasonableness of its literal application; at other times the same court has refused to carry the law to the extent of its letter, and has thus found or created numerous exceptions to its apparent universality. It is to be observed that section 1575 purports to declare a liability in case either subsection 3 or subsection 4 has been violated, and regardless of the existence of any causal relation whatever. A study of the Tennessee cases, however, has convinced us that in order to find any consistent principle or principles of decision underlying all of the exceptions which the Tennessee court has found to the operation of the act, these exceptions must stand, and may rightly be interpreted as standing, upon either the lack of any possible causal relation between absence of precaution and the "accident," or upon the clear impracticability of carrying out the statute to its literal extent.

Considering this matter of causal relation, and first as to subsection 3, and keeping in mind the distinction between the mere lack of sufficient proof of such relationship in a particular case and its impossibility in that class of cases: The Tennessee court has never, in terms, declared the necessity of finding that, to make the statute applicable, some way must be seen in which the taking of the precaution might have prevented the accident; on the contrary, it several times has used language obiter to the contrary effect. In considering the force of such language, we have not only the familiar warnings that dicta need not be followed, but as well specific warnings

by this court and by the Tennessee Supreme Court as to the dicta found in the opinions of the Tennessee court on this very statute. In Southern R. Co. v. Simpson, 131 F. 705, 709, this court construed the opinion in Iron Mountain R. Co. v. Dies, 98 Tenn. 655, 41 S. W. 860, which declared a liability under subsection 4 of this statute in all cases where a locomotive was run backward; but Judge Lurton says: "But no such broad question was involved. * * * The opinion as a construction of the statute is authoritative to the extent of the precise question decided, and no further." In East Tennessee, V. & G. R. Co. v. Scales, 2 Lea (Tenn.) 688, Chief Justice Turney was construing two former decisions of that court which had declared, in terms, that impossibility of taking the statutory precautions did not prevent the accrual of the statutory liability. He said: "The facts did not raise the question in either case. * * * Therefore the reasoning of the judge who wrote the opinion, and his expression of opinion as to the proper construction of the statute is obiter."

After reviewing, we think, all of the numerous Tennessee decisions appearing to touch this matter, it would seem that the two most in point, judging by the words they use, are Louisville & N. R. Co. v. Burke, 6 Cold. 45, and Chattanooga v. Walton, 105 Tenn. 415, 420, 58 S. W. 737. In each of these cases what is said upon this subject is clearly obiter. In the Burke Case, the plaintiff's intestate had been instantly killed, and the court held that there was no law permitting recovery for a death in any case. Nevertheless the court gave an exposition of the statute upon many questions which might have arisen if the man had lived, but expressly saying that it was stating only its conclusions, practically in syllabus form, and that an opinion would be later filed.[3] In the Chattanooga Case, the only question involved and decided (on this subject, see page 426 of 105 Tenn. [58 S. W. 740]) was: It was not error to charge that the liability would be absolute if the railroad failed to observe any statutory requirement, even though plaintiff might not be *able to show* that the accident *was caused* by this default. The statement on page 756 of the Womack Case in 173 F. which cites the Walton Case as holding that "it is no defense to show that the omission *could not* (italics ours) have contributed to the accident," was neither an accurate reference to the Walton Case nor jus-

---

[2] Western Co. v. Roberson, 61 F. 592, 603; Byrne v. Kansas City, Ft. S. & M. R. Co., 61 F. 605, 611, 24 L. R. A. 693; Felton v. Newport, 92 F. 470, 474; Id., 105 F. 332; Louisville & N. R. Co. v. Truett, 111 F. 876, 878; Southern R. Co. v. Simpson, 131 F. 705, 707; Rogers v. Cincinnati, N. O. & P. T. R. Co., 136 F. 573; Virginia & S. W. R. Co. v. Hawk, 160 F. 348, 353; Louisville & N. R. Co. v. Womack, 173 F. 752, 756; Southern R. Co. v. Sutton, 179 F. 471, 474; Southern R. Co. v. Koger, 219 F. 702, 704; Curtis v. Louisville & N. R. Co., 232 F. 109, 110.

[3] We have found no such opinion.

tified by the earlier cases there cited.[4] Plenty of Tennessee cases hold that the jury may not speculate as to whether the omission contributed to the accident and that it is not a question for the jury whether, in case of doubt, there was any such contribution—in other words, that the statute declares an absolute liability. in cases where there was an omission which *might have* contributed to the accident, no matter whether it did or not; but we find no case which is a decision, rather than a dictum, holding that there is liability where it is entirely clear that the omission *could have had* nothing to do with the damage.[5] To the contrary we have not only the dictum in Holder v. Chicago, St. L. & N. O. R. Co., 11 Lea (Tenn.) 176, "I doubt whether a party can legally be held liable * * * for a mere omission * * * which can be clearly shown not to have contributed to the injury," but specific cases tending to support this conclusion.

Examining the basis of the repeated exceptions which have been made to the express language of the statute, we find them founded on the conclusion of the court in each instance that it would be unreasonable to attribute to the Legislature an intent to go as far as the words extend. This reason we

think underlies the holdings that, though plainly within the language of the statute, indemnity may not be claimed by those persons of the various classes recited in Louisville & N. R. Co. v. Womack, supra; Rogers v. Cincinnati, N. O. & P. T. R. Co., supra, and Chesapeake, O. & S. W. R. Co. v. Foster, 88 Tenn. (4 Pick.) 671, 13 S. W. 694, 14 S. W. 428, and others. Reviewing some of these exceptions it is said in the last-cited case at page 687 of 88 Tenn. (14 S. W. 429): "Now, where is the authority for all these holdings to be found," unless "in the application of the common sense and common-law rules of construction."[6] We may add that the present inclination of the Tennessee court not to adhere to the letter of the statute in the extreme way once approved, is indicated not only by the language of Chief Justice Green in the Simpson Case, infra (page 462 of 149 Tenn. [261 S. W. 678]), "We merely say that a sound public policy and due regard for legislative intent require that another exception be made to the application of section 1574," but also by the discussion in Howard & Herrin v. Nashville, C. & St. L. R. Co., 153 Tenn. 649, 658, 284 S. W. 894, 46 A. L. R. 1530. In this case it was held, in spite of an earlier and much-cited express dictum, and in spite of the dictionary, that a dog was not an animal, which might invoke subsection 4, by appearing on the road. Judge Chambliss points out that the changes in railroad construction and operation within 75 years require changes in statutory construction, in determining what is a reasonable meaning.

In this state of the Tennessee decisions we feel justified in adopting the language of Judge Lurton in the Simpson Case, 131 F. 705, in saying: "There is nothing in the Tennessee decisions which forbids the application of the ordinary principles of interpretation, where the duty of applying and construing the statute is required." Quite clearly there is no settled rule of construction which so forbids. It is in one of these principles that a case will not be included within the universality of language in a statute when to do so will in no conceivable way aid the purpose of the statute or advance the remedy and will involve an entirely

---

[4] The cases cited bearing on this subject are: (a) Louisville & N. R. Co. v. Burke, 6 Cold. (Tenn.) 45; a dictum, as pointed out above. (b) Louisville & N. R. Co. v. Connor, 9 Heisk. (Tenn.) 19, 26; the case said only that there would be a liability "although the jury might be of opinion that the accident would have happened, even if the precautions had been observed." (c) Hill v. Louisville & N. R. Co., 9 Heisk. (Tenn.) 823, 827; the holding was that the jury might not, on the facts of that case, speculate whether an alarm whistle might have saved the accident. (d) Memphis & C. R. Co. v. Smith, 9 Heisk. (Tenn.) 863, and Nashville & C. R. Co. v. Thomas, 5 Heisk. (Tenn.) 266; these are the cases which, as to their broad aspect, were not followed, but were held to be dicta, in East Tennessee, V. & G. R. Co. v. Scales, supra. (e) Chesapeake, O. & S. W. R. Co. v. Foster, 88 Tenn. (4 Pickle) 671, 13 S. W. 694, 14 S. W. 428; the only question was whether gross contributory negligence was a bar. The case was one where the alarm whistle would very likely have prevented the accident. (f) East Tennessee & G. R. Co. v. St. John, 5 Sneed (Tenn.) 524, 73 Am. Dec. 149; this case did not involve the statute of 1858, but was decided on common-law principles, holding that there was a duty to sound the alarm whistle which might have saved the injury.

[5] The most recent thing we find is the very accurately phrased statement by Judge Green in Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 162, 148 S. W. 239, that railroads have not been allowed to show that the failure to observe the precautions was not the proximate cause of the injury.

[6] This is in the course of a dissenting opinion, but this comment is not in conflict with the majority opinion nor with the result.

See also Judge Lurton's conclusion (Rogers v. Cincinnati, N. O. & T. P. R. Co. [C. C. A.] 136 F. 575) that the Tennessee court "would regard the general intent and spirit of the statute rather than its literalism."

unreasonable and improbable legislative intent. Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226. We must think that subsection 3 was never intended for the protection of, and should not be applied for the protection of, persons who had full knowledge of the oncoming of the train or its presence, and whose safety could have been in no way promoted by the specified bell or whistle of this subsection. True, the alarm whistle of subsection 4 might have had effect as a warning to get further away; but the subsection 3 whistle was only to give notice of the train. Matthews had more than notice, he had knowledge. Walking toward the train in what he thought a safe path, no ringing of the bell, or regular whistle blast, could have told him anything he did not know.

However, there is more direct holding as to subsection 3. In Southern R. Co. v. Simpson, 149 Tenn. 458, 261 S. W. 677, it appears that while the train was passing over a highway crossing and after its front had passed, an automobile on the highway drove into the side of the train and was wrecked. We do not much amplify—and we think we do not depart from—the reasoning of this opinion if we pronounce its theory to be that these precautions are designed to protect two classes of persons. The first class is those who become obstructions upon the road ahead of the train and so will be hurt unless they *get away;* these persons are protected by the alarm whistle and train stopping of subsection 4. The other class of persons is those who, though not having become obstructions on the road, yet are in danger of being hurt by the train unless they *keep away;* these persons are protected through the notice which they receive by the whistles at country crossings and the whistle or bell at frequent intervals within a city, as specified in subsection 3 (and another one referring to country crossings). The sole object and effect of this whistle or bell are as a warning, and the statute did not intend to give indemnity to those who were already completely warned. We see no other satisfactory ratio decidendi for this opinion. It cannot rest upon the theory of contributory negligence, for such negligence, no matter how gross, is not a bar under this statute. It might be claimed that the opinion rested, in essential part, on the theory that the automobile drivers were beyond the protection of this law because they were themselves law violators, not having observed the stop law; but this view cannot be urged since the decision in Tennessee Cent. R. Co. v. Page, 153

Tenn. 84, 282 S. W. 376, in which an automobile driver who did not stop before driving upon a crossing ahead of the train, was allowed to recover for violation of this subsection 3, and yet the Simpson Case was expressly approved.[7]

Not only is this Simpson Case later than our Koger Case, supra, relied upon by the court below, and therefore superseding, if there is conflict, but, as we have interpreted this Simpson Case, there is no conflict. It does not hold that the person struck must once have been in front of the train, and so it is not inconsistent with the Koger Case in our supposition (219 F. 706) that one who is not warned by the whistle and drives into the side of an unseen train might recover. It does not depend upon any particular manner or extent in which the whistle warning, if given, might have prevented the injury, and so does not reach the Koger Case in that material feature (page 706 of 219 F.), involving the probability that the whistle would have given warning to the mother that the train was coming, and so she would have kept the child out of danger. Our conclusion is that it was error to submit the case to the jury as depending on subsection 3.

We think also that subsection 4 was not applicable. Before considering the reasons therefor, it is to be noted that this subsection positively requires three things—the alarm whistle, the application of the brakes, and, if possible, the stopping of the train. In a case where the section applies, these requirements supersede all common-law rules of due care and, if performed, the defense is complete whatever the common-law negligence (Graves v. Illinois Cent. R. Co., supra); but the precautions cannot be separated; unless they are all taken, the statute is not met. The alarm whistle might be the only step required by the common standard of due care; but, in all events and in every case, the train must be stopped, if possible.

The Tennessee court has distinctly held that the statute will not be applied for the protection of employees engaged in their railroad duties, nor for men upon and around the tracks in and about the station grounds and switching yards, whether employees or strangers. Shannon's Code, § 1574 (4), note 100. These holdings have largely been put (e. g., Louisville & N. R. Co. v. Robertson, 9 Heisk. (Tenn.) 276, 280), upon the ground that to apply the statute in such cases would

---

[7] We do not overlook the reference to the "willful" feature of the Simpson collision; but this must mean "reckless." It cannot mean "intentional."

be so impracticable as to disrupt train operations, and hence it will not be supposed that the Legislature intended such a result. This reason for these holdings applies in large measure in the present case. This accident happened between the main and the switching track, within a city, where the tracks were passing among factories and lumber yards and within a short distance of the station. It is common knowledge that considerable numbers of men are frequently passing along and over such tracks in such a location; indeed, it is so proved in this case to show that Matthews was not a trespasser. If the train were obliged to stop every time a man was seen upon or around the tracks in such a locality, and through a long distance each side of the station, time schedules would have to be abandoned. We regard the application of the subsection to this situation as fully as impracticable as in some of the cases where the statute has been held inoperative; but, if we assume that such a holding here would be inconsistent with some Tennessee decisions, yet we must conclude that Matthews never appeared upon the road as an obstruction ahead of the train.[8] This is essential in order that this subsection may be invoked (e. g., Nashville, C. & St. L. R. Co. v. Egerton, 98 Tenn. (14 Pickle) 541, 41 S. W. 1035). An apprehension that something near by the track, but not an obstruction, might become such just before the train arrived, might often rightly be charged against the engine crew; but this would give rise to a common-law duty and would not touch the statute. Matthews was walking towards the train in a place commonly and safely used for walking, even though two trains might be passing at the same time on the two tracks. There was no such passing in progress, but the entire space to and across the passing track was open to Matthews, if he wished to step farther away. If words are to have their ordinary meaning, he cannot be thought an obstruction upon the railroad before or at the time the head of the engine passed him.

The argument to the contrary is based upon the Sutton Case, supra, and the Tennessee cases there cited. That was a margin line case; the present case is fairly distinguishable on its facts, and we cannot put it within that decision. It was there held that

a man may be an obstruction, within the meaning of the statute, if, as the engine head passes him, though he escape physical contact with the end of the engine bumper, he is yet so close thereto that, by suction or his involuntary movement, he is struck by or goes against the engine driving wheels. He could be called an obstruction on the road, because, for a reason naturally to be expected, the engine did not get past him without collision. In the present case, the head of the engine and 250 feet of the train had passed Matthews in safety, thus demonstrating that he was not, even in the most liberal definition accepted by the Sutton Case, an obstruction at the time the engine arrived opposite him. There was another feature in the Sutton Case important to the result and not here present. Sutton clearly had been an obstruction on the road. He had been walking between the rails and with his back to the engine; subsection 4 was clearly applicable, and these precautions were required. The engine men blew the alarm and put on the brakes; then, seeing Sutton step to one side and thinking he was out of danger, they suspended the precautions. The statute had become applicable and continued to apply until Sutton in fact ceased to be an obstruction; and he never did.

The judgment is reversed, and the case remanded for further proceedings.

KNAPPEN, Circuit Judge (dissenting). I think the judgment of the District Court should be affirmed. The trial judge properly submitted the case to the jury under a charge that "one may be an obstruction upon the road as applicable to this case, if he is * * * so close to the track that the person upon the train whose duty it is to exercise the duty of lookout might reasonably apprehend or anticipate that he was in danger of being struck; that is to say, might reasonably apprehend that the rush of the train would so addle him or confuse him, or destroy his mental faculties or his physical power, or both, to such an extent that he would lose control of himself and involuntarily stumble or fall onto the track or against or into the train." This instruction was directly within Southern Railroad Co. v. Sutton, 179 F. 471, 476, in which this court held that taking into account the attracting and disturbing force of a swiftly approaching train, a person "still so close to the track that, having due regard for the instinct of self-preservation and the involuntary movements of the body, there is still a reasonable probability or likelihood that he may fall or be thrown against

---

[8] The statement in Curtis v. Louisville & N. Railway Co. (C. C. A.) 232 F. 109, 110, that in order to make out a case under the statute the burden is on the plaintiff to show that the obstruction did appear on the track ahead of the engine, is plainly a mistake; the word used should have been "road," not "track."

the side of the engine or train as it passes him," is within "striking distance" of the train.

In the later case of Southern Railway v. Koger, 219 F. 702, we held that under the Tennessee Railroad Precautions Act in question, where the provisions regarding bell ringing, whistle blowing, etc., by locomotives while in cities or towns have not been observed, the liability is absolute, and proof need not be made that the accident was the proximate result of the railroad's failure to observe the statutory precautions; also that contributory negligence of the person injured is not a bar to recovery, and may be considered only in mitigation of damages; also that it is not a requisite to recovery that the person injured should have been ahead of the train on the track before being struck. Certiorari was denied. 238 U. S. 633, 35 S. Ct. 938, 59 L. Ed. 1498. I find in the decisions of neither the Tennessee courts nor this court any warrant for a view that to make the statute applicable the person struck must have appeared "on the track" ahead of the engine. The holding in the Hawk Case (C. C. A.) 160 F. 348, 353, cited in Curtis v. Louisville & N. R. Co. (C. C. A.) 232 F. 109, 110, was merely that it must be proved that the person struck appeared on the road in front of the engine, as an obstruction thereto.

Under the settled decisions, the expression "upon the road" must be construed to mean either upon the track or so close to it as to be within striking distance. Manifestly, the fact that the engine, tender, and two mail coaches passed Matthews without striking him is not inconsistent with the conclusion, warranted otherwise by the testimony, and in view of what actually occurred, that when seen he was an obstruction on the track, within the definition already given.